The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of L.B., a Child, and Concerning R.B., Respondent–Appellant,

and

A.B., Appellee.

No. 10CA2344.

Colorado Court of Appeals, Div. V.

April 28, 2011.

1204

Alison D. Casias, Special Assistant County Attorney, Dillon, Colorado, for Petitioner–Appellee.

Anne E. Parmley, Guardian Ad Litem.

Heather K. Beattie, LLC, Heather K. Beattie, Frisco, Colorado, for Respondent–Appellant.

Carlson, Carlson & Dunkelman, LLC, Paul R. Dunkelman, Frisco, Colorado, for Appellee.

Opinion by Judge WEBB.

In this dependency and neglect action, R.B., mother, appeals from the judgment allocating sole physical custody and decision-making responsibility for her child, L.B., to the child's father, A.B., and his parents, J.B. and P.B., jointly. She primarily contends that we must remand for further proceedings because her court-appointed trial counsel was ineffective. Because we conclude that this remedy is available only where parental rights have been terminated, and we reject her other contentions, we affirm.

## I. Background

When L.B. was· born in 2002, R.B. and A.B. were married. They separated in April 2009 and a dissolution action was commenced. Shortly thereafter, Lake County Health and Human Services (Department) opened a voluntary dependency and neglect case after receiving reports of domestic violence between mother, who had custody of L.B., and her ex-boyfriend. Both parents complied with the voluntary treatment plan and L.B. remained in mother's care. However, in September 2009, the Department filed a dependency and neglect petition based on concerns that mother had physically abused L.B. and a report that L.B. had displayed sexualized behavior. Pursuant to a voluntary safety plan, father became L.B.'s primary caretaker and mother received supervised visitation.

Father and mother entered no-fault admissions to the petition and the court adjudicated L.B. dependent and neglected as to both of them. The court then approved and adopted treatment plans that generally required them to be more effective parents; to gain an understanding of the serious nature of the child's mental, physical, and emotional conditions; and to help L.B. develop more appropriate social and emotional behavior. Mother's treatment plan also required that she become more aware of the factors that led to the Department's intervention and seek to repair the mother-child relationship.

In January 2010, the marriage was dissolved. The Department then moved for temporary legal custody of L.B., who, throughout the case, had struggled with multiple physical and mental health needs. In its motion, the Department stated that L.B.'s behavior had deteriorated and that it, along with her treatment providers and parents, agreed the child should enter a residential program. The court authorized L.B.'s admission to the program.

In September 2010, the court held a contested permanency planning hearing to allocate parental responsibilities. The domestic case was trailed so that permanent orders could be conformed to this allocation. The court found that L.B. had special needs and was a high maintenance child. It determined that father had a better grasp of L.B.'s serious problems and that, although he was still in some denial, he was more reflective, focused, and willing to meet her needs. The court also found that L.B. reacted better to father.

Further, the court found that neither parent could care for L.B. independently. It concluded that father had a better support system as shown by the extensive assistance his parents had provided during this case and their continuing commitment to L.B. The court noted the opinions of various experts that because L.B. could not handle transition well, a shared-parenting plan would not be feasible. It also found that southwest Colorado, where father's parents live and he in-

tended to relocate, had more and better services available.

The court awarded sole physical custody and decision-making authority to father and his parents jointly and allowed mother supervised parenting time every other week, to be exercised in two four-hour blocks. It concluded that although mother planned to remain in Leadville, she could exercise her parenting time in southwest Colorado and ordered that her travel costs be divided equally between the parties.

Following the court's order, L.B. was discharged from the residential program and placed in father's physical care. The record does not show whether permanent orders in the domestic case reflect the same custody and decision-making allocation.

## II. Ineffective Assistance of Counsel

Mother first contends we should remand for further proceedings because her trial attorney's allegedly deficient performance violated her statutory and constitutional right to effective assistance of counsel. Because we conclude that mother has no right to such relief, we decline to reach the merits of her ineffective assistance claim.

As an indigent parent, mother had a statutory right to court-appointed counsel at every stage of the dependency and neglect proceeding. *See* §§ 19–1–105(2), 19–3–202(1), 19–3–601(2), C.R.S.2010; *A.L.L. v. People*, 226 P.3d 1054, 1062 (Colo.2010); *People in Interest of M.C.*, 94 P.3d 1220, 1226 (Colo.App.2004) (at the first appearance in a dependency and neglect proceeding, a parent must be advised of the right to be represented by counsel at every stage of the proceeding and of the right to seek appointed counsel if he or she is financially unable to secure counsel).

■ Where proceedings could result in termination of parental rights, the assistance of counsel is also required by due process. *See S.S. v. Wakefield*, 764 P.2d 70, 74 (Colo.

1988); *People in Interest of C.H.*, 166 P.3d 288, 290 (Colo.App.2007). Because of this constitutional protection, an indigent parent may challenge a termination order on the ground that the parent did not receive effective assistance of appointed counsel, *C.H.*, 166 P.3d at 290, using the same standard applied in criminal cases. *People in Interest of A.J.*, 143 P.3d 1143, 1148 (Colo.App.2006).

■ However, where, as here, the state seeks only to award custody of a child to other persons rather than to terminate parental rights, a parent has no due process right to counsel. *People in Interest of M.G.*, 128 P.3d 332, 334 (Colo.App.2005); *see In re Marriage of Hartley*, 886 P.2d 665, 674 n. 16 (Colo.1994) ("[T]he constitutional right to assistance of counsel is limited to adult proceedings which are criminal in nature and equivalent juvenile cases."). This is so because in such a case, the parent retains many rights, including the right to petition to regain custody or increase parenting time. *M.G.*, 128 P.3d at 334.[1] Therefore, because mother's right to counsel is purely statutory, we agree with the division in *M.G.* that it does not give rise to an ineffective assistance claim. *See id.*

Mother cites no authority from another jurisdiction, nor are we aware of any, allowing an indigent parent to raise ineffective assistance of counsel in challenging an order involving custody, decision making, or any other issue short of terminating parental rights. Allowing challenges on this basis would create the anomaly of appeals from initial dispositional orders being argued on the basis of ineffective assistance, before entry of the final order of termination. *See People in Interest of J.M.*, 74 P.3d 475, 476 (Colo.App.2003) ("An appeal may be taken after entry of the initial dispositional order following an adjudication of dependency or neglect and again after entry of the final order of termination.").

1. Although such a decision includes an award of permanent custody, the allocation of parental responsibility remains subject to change, including here an expansion of mother's parental rights if warranted under the applicable statutes. *See* § 19–3–702(9), C.R.S.2010 (permitting the court to modify a child's placement based on enumerated factors); *see also* §§ 14–10–129 (modification of parenting time), 14–10–131 (modification of custody or parental responsibility), C.R.S. 2010.

We are not persuaded otherwise by our supreme court's recognition of an ineffective assistance claim in postconviction criminal proceedings, although the inmate has only a limited statutory right to postconviction counsel. *See Silva v. People,* 156 P.3d 1164, 1169 (Colo.2007) (because statutory right to postconviction counsel arises only when the Crim. P. 35(c) petition has arguable merit, postconviction counsel must be at least minimally effective to give that right meaning). When subject to an erroneous sentence or a flawed conviction, a defendant is either deprived of liberty or bears the stigma of a felony. *See People v. Tenneson,* 788 P.2d 786, 794 (Colo.1990). These harms are more significant than the interests at stake in a dependency and neglect proceeding to allocate parental responsibilities because, as indicated, the parent does not risk an irrevocable deprivation of parental rights. *M.G.,* 128 P.3d at 334.

Accordingly, we conclude that mother has no claim for relief based on ineffective assistance of her trial counsel.

### III. Findings Under Section 19–3–702(3.5), C.R.S.2010.

Mother next contends the trial court did not adequately protect her rights under section 19–3–702(3.5) because it failed to make findings that it had applied procedural safeguards to preserve her parental rights and reasonable efforts had been undertaken to finalize the permanency plan. We discern no error.

■ Although subsections (a) and (b) of section 19–3–702(3.5) require findings, a lack of findings does not alone establish a failure by the court to observe procedural safeguards to protect mother's rights or to ensure that reasonable efforts were undertaken. *See People in Interest of E.C.,* —— P.3d ——, ——, 2010 WL 4241599 (Colo.App. 2010).

■ Here, the court took extensive evidence during the hearing in which mother was represented and testified. Its order allocating parental responsibility ensured that mother's input would be elicited before any major decisions were made, that she could exercise regular and significant parenting time consisting of visits every two weeks and frequent telephone and video contact, and that she would be responsible for only one-half of the travel costs. Both the course of the hearing and the order show that the court applied sufficient procedural safeguards to preserve mother's parental rights. *See People in Interest of M.B.,* 70 P.3d 618, 625 (Colo.App.2003).

■ As for the Department's reasonable efforts to finalize the permanency plan, the record reflects that numerous and varied services were provided to the family. Nevertheless, L.B. continued to have significant special needs that mother could not address as effectively as father. Further, L.B.'s placement with father and his parents merely reinstated the arrangement that existed before she was admitted into the residential program and avoided an out-of-home placement. Contrary to mother's contention, the record indicates that the Department complied with section 19–3–506, C.R.S.2010, to the extent necessary. The record shows that the Department made efforts to remedy the situation that had led to its involvement. The record also shows that, although mother remained unable adequately to care for L.B., its efforts in developing and implementing the permanency plan resulted in a permanent custody award that avoided an out-of-home placement, secured a stable and permanent home for L.B., and preserved the mother-child relationship.

Accordingly, we conclude that despite the absence of specific findings regarding reasonable efforts, the Department made the necessary efforts under section 19–3–702, C.R.S. 2010. *See E.C.,* —— P.3d at ——.

### IV. Dispositional Decree

Mother next contends the trial court erred by awarding sole physical custody and decision-making authority to father and his parents without first determining that she was an unfit parent and that L.B. would be endangered if her parental rights were not restricted, and by not making specific findings regarding the best interests factors listed in section 14–10–124(1.5), C.R.S.2010. We reject these contentions.

### A. Law Governing Dispositions

■ An adjudication of dependency and neglect establishes "whether the status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship." *People in Interest of A.M.,* 786 P.2d 476, 479 (Colo.App. 1989). If a child is adjudicated dependent and neglected, state intervention is allowed and the trial court must conduct a hearing to determine the proper disposition best serving the interests of the child and the public. §§ 19–3–507(1)(a), 19–3–508(1), C.R.S.2010; *People in Interest of T.E.H.,* 168 P.3d 5, 8 (Colo.App.2007); *People in Interest of D.R.W.,* 91 P.3d 453, 456–57 (Colo.App.2004).

Section 19–3–508(1), C.R.S.2010, authorizes various dispositions, including placement of the child in the legal custody of one or both parents or a relative such as the child's grandparent, or other suitable person, with or without protective supervision, and under such conditions as the court deems necessary and appropriate. § 19–3–508(1)(a)–(b), C.R.S. 2010. Permanent custody and parental responsibilities must be allocated in accordance with the child's best interests. § 19–1–102(1)(c), C.R.S.2010; *People in Interest of C.M.,* 116 P.3d 1278, 1284 (Colo.App.2005).

### B. Standard of Review

■ The preponderance of the evidence standard applies to both the adjudicatory and dispositional stages of a dependency and neglect proceeding. §§ 19–3–505(1), 19–3–508(2), C.R.S.2010; *L.L. v. People,* 10 P.3d 1271, 1277 (Colo.2000); *People in Interest of S.G.L.,* 214 P.3d 580, 583 (Colo.App.2009). In weighing sufficiency of the evidence, we review the record in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the court's decision. *See People in Interest of D.L.R.,* 638 P.2d 39, 41 (Colo. 1981). Further, we will not disturb the trial court's findings and conclusions if the record supports them, even though reasonable people might arrive at different conclusions based on the same facts. *In Interest of K.D.,* 139 P.3d 695, 702 (Colo.2006).

### C. Allocation of Parental Responsibilities

■ Here, the issue of custody arose in a dependency and neglect proceeding governed by the Juvenile Code, not the Uniform Dissolution of Marriage Act (UDMA), sections 14–10–101 to –133, C.R.S.2010. *L.A.G. v. People,* 912 P.2d 1385, 1390 (Colo.1996); *People in Interest of B.C.,* 122 P.3d 1067, 1070 (Colo. App.2005). Because the adjudication of L.B. as dependent and neglected provided the predicate for the disposition entered, no finding concerning either unfitness or endangerment was necessary. *See* § 19–3–508(1)(a)–(b) (authorizing placement of child in legal custody of parent or relative if the child has been adjudicated dependent and neglected); *L.A.G.,* 912 P.2d at 1392 (a precondition to any custody decision in a dependency and neglect proceeding is a judicial determination that the child's present custodial circumstances or other aspects of the child's current environment are detrimental and, with governmental supervision, must be altered).

■ For the same reason, although custody and parental responsibilities were to be allocated according to L.B.'s best interests, the court was not required to apply the best interests factors specifically listed under section 14–10–124(1.5). *See L.A.G.,* 912 P.2d at 1391. Nonetheless, the court indicated in its order that it considered the factors listed under that statute. In addition, it made findings regarding other pertinent factors such as L.B.'s need for both stability and a primary caretaker having the necessary support system and an ability to effectively respond to her special needs and conditions. Because the evidence supports the determination that placement with father and his parents will be in L.B.'s best interests, we may not overturn the award of sole physical care and decision-making authority to them. *See People in Interest of E.D.,* 221 P.3d 65, 68–69 (Colo.App.2009).

## V. Other Issues

We are unable to determine whether mother has abandoned the other issues she raised initially by failing to include them in her supplemental petition. In any event, we reject them.

The court granted mother's motion for court-appointed appellate counsel, who represented her on both the original and supplemental petitions. Nor did error occur as a result of father's parents not being added as either special respondents under section 19–3–502(6), C.R.S.2010, or intervenors under section 19–3–507(5), C.R.S.2010. Both statutes are permissive and we are aware of no requirement that relatives need to 'be designated with either status as a precondition for the placement decision under the disposition provisions of section 19–3–508(1).

The judgment is affirmed.

Judge GRAHAM and Judge J. JONES concur.