The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 22, 2022

## 2022COA146

**No. 22CA0723, *People in Interest of A.S.L.* — Juvenile Court — Dependency and Neglect — Allocation of Parental Responsibilities — Out-of-Home Placement Options — Reasonable Efforts; Appeals — Standard of Review — Mixed Question of Law and Fact**

In this dependency and neglect case, a division of the court of appeals holds for the first time that whether the government satisfied its obligation to make reasonable efforts to reunify the family and avoid out-of-home placement is a question of law we review de novo.

COLORADO COURT OF APPEALS                      **2022COA146**

---

Court of Appeals No. 22CA0723
Weld County District Court No. 19JV704
Honorable Meghan Saleebey, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.S.L., a Child,

and Concerning A.S.V., a/k/a A.S.V.B.,

Appellant,

and

M.B. and J.B.,

Intervenors.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE TOW
Fox and Yun, JJ., concur

Announced December 22, 2022

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Windsor, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

Weibel, Zacheis, & Greenfield, LLC, Dallas D. Greenfield, Greeley, Colorado, for Intervenors

¶ 1     In this dependency and neglect proceeding, A.S.V. (mother) appeals the juvenile court's judgment allocating parental responsibilities for A.S.L. (the child) to foster parents.  We affirm.  In doing so, we conclude for the first time that an appellate court reviews de novo the court's ultimate conclusion whether a child protection agency's actions in a dependency and neglect case satisfy its obligations to make reasonable efforts to reunify the family and avoid out-of-home placement of the child.

## I.     Background

¶ 2     After the Weld County Department of Human Services received a report of domestic violence and drug paraphernalia in the home, and that mother had had a "major overdose," a juvenile court magistrate ordered the child and a younger half-sibling (who is not part of this appeal) into the Department's emergency temporary custody.  The Department then filed a petition in dependency and neglect, alleging that the child's environment was injurious to his welfare and that he lacked proper parental care through mother's actions or omissions.  Mother admitted the allegations, and the

1

court adjudicated the child dependent and neglected. The Department placed the then-fourteen-year-old child in foster care.[1]

¶ 3 The court adopted a treatment plan for mother, which, among other things, required her to engage in parenting time with the child. Initially, the court ordered mother to participate in supervised parenting time a minimum of two times per week. A few weeks later, however, a caseworker testified that mother had been "inappropriate" and "erratic" at her parenting time visits, causing the child to become "dysregulated" and to "shut down." The court suspended mother's visits pending her (1) completion of "detox"; or (2) scheduling and participating in mental health and substance abuse evaluations; or (3) providing two weeks of clean urinalysis tests. Later, the Department informed the court that a provider had indicated that mother could not complete a substance abuse evaluation until her mental health concerns were addressed. The Department then referred mother for a psychological evaluation.

---

[1] Several months later, after an adjudicatory hearing at which father, B.L., failed to appear, a treatment plan was adopted for father, as well. Father is not a party to this appeal.

¶ 4     At one point, mother asserted that she had provided two weeks of negative urinalysis tests, and she requested to resume parenting time visits. The Department responded that mother just needed to contact her caseworker to reinstate visits. Later, however, the Department reported that mother had not done so and had not visited the child. Throughout the case, the child consistently expressed that he did not want to visit with mother.

¶ 5     Several months after the child was placed in foster care, the foster parents intervened in the case. The Department and the child's parents entered into a stipulation allocating parental responsibilities (APR) to the foster parents. However, the court continued the APR hearing because the intervenors had not signed the stipulation.[2] At the beginning of the continued hearing, mother withdrew her agreement to the stipulation, and the court proceeded to a contested APR hearing. After that hearing, the court entered an order consistent with the terms of the original stipulation, granting APR for the child, who was then almost seventeen years old, to the foster parents.

---

[2] The child's maternal grandmother had also intervened in the case and participated throughout. She is not a party to this appeal.

¶ 6    Mother appeals, contending that the juvenile court failed to make sufficient findings and failed to hold the Department to its burden of providing reasonable efforts to reunify the family and avoid out-of-home placement of the child.  In particular, mother contends that the Department did not make reasonable efforts because her visitation with the child was suspended and never reinstated.

## II.    Standard of Review

¶ 7    As two divisions of this court have recently recognized, it is not clear whether we are to review the juvenile court's determination of reasonable efforts de novo or for clear error.  *See People in Interest of E.S.*, 2021 COA 79, ¶ 16; *People in Interest of A.A.*, 2020 COA 154, ¶¶ 9-13.  Even more recently, however, our supreme court held that whether the government satisfied active efforts in an Indian Child Welfare Act (ICWA) case is a mixed question of fact and law, meaning that the court's factual findings are reviewed for clear error but "whether those findings satisfy ICWA's active efforts requirement is a question of law that we review de novo."  *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 20.

4

¶ 8    We see no logical distinction between the appellate review of an active efforts finding under ICWA and a reasonable efforts finding under the Children's Code.  Accordingly, we conclude that whether the Department satisfied its obligation to make reasonable efforts to reunify the family and avoid out-of-home placement of the child is a mixed question of fact and law.  Therefore, we review the juvenile court's factual findings on the issue for clear error but review de novo the court's legal determination, based on those findings, as to whether the Department satisfied its reasonable efforts obligation.

### III.    Legal Framework

#### A.    Reasonable Efforts

¶ 9    The Children's Code recognizes the obligation that federal law imposes on states to make "'reasonable efforts' to prevent the placement of abused and neglected children out of the home and to reunify the family whenever appropriate."  § 19-3-100.5(1), C.R.S. 2022 (citing the "'Adoption Assistance and Child Welfare Act of 1980,' federal Public Law 96-272 [codified at 42 U.S.C. § 1397b]").  The Children's Code further recognizes that federal law "encourages expediting permanency planning for children in out-of-home

placement by removing barriers to permanency and streamlining entitlement services." § 19-3-100.5(2) (citing the "'Adoption and Safe Families Act of 1997,' federal Public Law 108-89 [codified at 42 U.S.C. § 671(a)(15)(A), (B)]").

¶ 10    To that end, the General Assembly defines reasonable efforts as "the exercise of diligence and care . . . for children and youth who are in foster care or out-of-home placement or are at imminent risk of foster care or out-of-home placement." § 19-1-103(114), C.R.S. 2022.[3]  This definitional section further provides that "[s]ervices provided . . . in accordance with section 19-3-208[, C.R.S. 2022] are deemed to meet the reasonable effort standard described in this subsection (114)."  *Id.*; *see also* § 19-3-100.5(5).

¶ 11    Section 19-3-208, in turn, says that the Department "shall provide a set of services" as set forth in that section.  § 19-3-208(1). These services are designed to accomplish certain goals, including,

---

[3] Mother cites a previous codification of the statute, section 19-1-103(89), without denoting a year.  However, the General Assembly repealed and reenacted the entire definitional section of the Children's Code in 2021.  Ch. 136, sec. 144, § 19-1-103, 2021 Colo. Sess. Laws 753.

among other things, "[a]void[ing] the unnecessary placement of children into foster care," and "[f]acilitat[ing], if appropriate, the speedy reunification of parents with any of their children who have been placed in out-of-home placement." § 19-3-208(2)(a)(III), (IV). Among the services the Department must provide are visitation services for parents whose children have been placed outside of the home. § 19-3-208(2)(b)(IV).

## B.    Best Interests of the Child

¶ 12    In proceedings under the Children's Code, a juvenile court must allocate parental responsibilities in accordance with the child's best interests. *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011).  Specifically, the court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2022.  *People in Interest of J.G.*, 2021 COA 47, ¶ 18.  These purposes include securing for each child in the case the care and guidance, preferably in his or her own home, that will best serve the child's welfare and society's interests.  *See* § 19-1-102(1)(a).

¶ 13    The child's health and safety are the paramount concerns in determining whether services, including parenting time, are necessary and appropriate.  *A.A.*, ¶ 17; *People in Interest of B.C.*,

122 P.3d 1067, 1070 (Colo. App. 2005). Visitation services must be designed to promote the health, safety, and well-being of the child; facilitate the speedy reunification of parents and children; and promote the best interests of the child. § 19-3-208(2)(a); *A.A.*, ¶ 17.

## IV. Analysis

### A. The Lack of Explicit Findings

¶ 14 Mother correctly asserts that the court made no specific written or oral findings regarding reasonable efforts at the continued APR hearing. She contends that the lack of findings alone warrants reversal. We disagree.

¶ 15 Failure of the court to make express findings, on its own, does not establish a failure by the court to ensure that the Department made reasonable efforts. *See L.B.*, 254 P.3d at 1207; *see also People in Interest of M.D.*, 2014 COA 121, ¶ 37 (finding no reversible error despite the absence of specific findings regarding reasonable efforts). Here, reviewing de novo the ultimate question of whether the Department's efforts satisfied its obligation, we conclude that the record amply demonstrates the Department's reasonable efforts to ensure mother had adequate visitation.

## B. The Department's Reasonable Efforts

¶ 16     First, we reject the Department's contention that reasonable efforts are only required when parental rights are being terminated.

¶ 17     The Department argues that the reasonable efforts requirement arises in the context of a determination of unfitness as a prerequisite for termination. *See* § 19-3-604(2)(h), C.R.S. 2022. But while reasonable efforts are relevant to a fitness inquiry, mother does not rely on — or even cite — section 19-3-604. Rather, mother cites sections 19-3-100.5 and 19-3-208.

¶ 18     The Department also relies on *L.B.*, but this reliance is misplaced because the Department misreads the case. The issue in *L.B.* was whether the juvenile court's lack of specific findings regarding reasonable efforts required reversal. 254 P.3d at 1207. The division held that reversal was not required, not because the Department had no duty to provide reasonable efforts, but rather, because "despite the absence of specific findings regarding reasonable efforts, the Department *made the necessary efforts*" under the relevant statute. *Id.* (emphasis added).

¶ 19     We also note that *L.B.* involved a permanency planning hearing conducted pursuant to section 19-3-702, C.R.S. 2022.

Under that section, a juvenile court determining a permanent placement for a child must consider "[w]hether reasonable efforts have been made to finalize the permanency goal." § 19-3-702(3)(b).

¶ 20    Here, it is unclear whether the APR hearing was considered a permanency hearing. If it was, then the court was obviously required to consider reasonable efforts under section 19-3-702. But, as we have noted, even if the hearing was not a permanency hearing, the Department has a statutory obligation to provide reasonable efforts to reunify the family and avoid out-of-home placement of the child. § 19-3-100.5. This obligation exists even when the juvenile court, in lieu of terminating a parent's rights, enters an APR to a nonparent. *See People in Interest of E.C.*, 259 P.3d 1272, 1276 (Colo. App. 2010).

¶ 21    We also reject mother's contention that the present case is similar to *A.A.*, ¶¶ 25-29, in which a division of this court held that a magistrate erred by suspending a parent's visitation and refusing to reinstate it until the parent could demonstrate sobriety. In this case — unlike in *A.A.* — mother had been erratic and possibly under the influence of drugs at earlier visits with the child. Furthermore, when the court put its restrictions in place in this

case, it did so for the child's well-being, finding that "it is appropriate for the protection of the child[] that there be an immediate order of protection" and that mother's visits with the child be suspended. Given these differences, the division's reasoning in *A.A.* is not applicable here.

¶ 22 Instead, as the record amply demonstrates, the Department made reasonable efforts to ensure adequate visitation for mother. Specifically, the Department referred mother to

- services she needed to complete in order to meet the court's requirements for reinstating her visitation;

- urinalysis testing, substance abuse and mental health evaluations, and an inpatient substance abuse ("detox") program; and

- two therapeutic visitation facilities and at least one supervised visitation provider.

Nevertheless, and despite mother's assertions on appeal, the record shows that mother did not engage in these services.

¶ 23 For example, mother asserts that, by January 2020, she had successfully completed "detox" through the Wings program, but she testified to the contrary in January 2021, saying that she was

11

"kicked out of the . . . program." Mother also asserts that she completed substance abuse and mental health evaluations. But the record shows that she completed a substance abuse assessment that was inconclusive because she did "not admit[] to recent use."

¶ 24 Even when mother completed the prerequisites to reinstate her visits with the child, she did not sufficiently follow through to resume visitation. For example, after mother asserted that she had met the court's prerequisite of sobriety tests, mother was told she merely needed to contact her caseworker to reinstate visits. But she failed to do so.

¶ 25 Moreover, the record supports that mother's visits were not in the child's best interests. The caseworker, who testified as an expert in child protection casework, opined that contact between the child and mother would negatively impact the child. The caseworker testified at the APR hearing that the child was "almost [seventeen] years old. He's very stable. He's . . . got . . . a good head on his shoulders." The caseworker continued, "[c]ontact at this time [with mother] would cause confusion and disrupt[] the stability of [the child's] home." Therefore, the caseworker opined that the APR to foster parents was in the child's best interests.

¶ 26    The court found that the child's best interests would be served by allocating primary residential custody to the foster parents and providing for some parenting time for mother.  That finding has record support, and we will not disturb it.[4]

## V.    Disposition

¶ 27    The judgment is affirmed.

JUDGE FOX and JUDGE YUN concur.

---

[4] Mother does not challenge the juvenile court's finding regarding the child's best interests or the specific terms of the APR.