24CA0938 Peo in Interest of BJM 04-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0938
Conejos County District Court No. 22JV30005
Honorable Crista Newmyer-Olsen, Judge

---

The People of the State of Colorado,

Petitioner,

In the Interest of B.J.M. a Child,

and Concerning R.S.,

Appellant,

and

C.R.M.,

Appellee.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Brown and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

---

No Appearance for Petitioner

Josie Burt, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellee

¶ 1    In this dependency and neglect action, R.S. (mother) appeals the judgment allocating parental responsibilities for B.J.M. (child). We affirm.

## I.    Background

¶ 2    The Conejos County Department of Social Services (Department) filed a petition in dependency and neglect alleging that mother and the child tested positive for amphetamine upon the child's birth and that mother admitted to relapsing on methamphetamine days before the birth.  The Department was also concerned about the parents' lack of stable housing and C.R.M.'s (father) alcohol abuse, criminal history, and history of domestic violence.

¶ 3    The child was classified as medically fragile and required a gastronomy tube (g-tube) for feedings.  Following her release from the hospital, the child was placed in a medical foster home.

¶ 4    The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for the parents.

¶ 5   Well over a year into the case, the court authorized a trial reunification, placing the child with mother at her residence in Alamosa. Not long after, mother moved for an allocation of parental responsibilities (APR) designating her the primary residential parent and sole decision-maker. Father opposed her request, proposing instead that he be the sole decision-maker and that the child primarily reside with him in Denver.

¶ 6   The court held a multi-day APR hearing over the course of three weeks. On the first morning of the hearing, mother's counsel sought to withdraw the APR motion because mother had a substance use "lapse," which meant that counsel could not "argue that she's a fit parent as to right now." Despite this, mother ultimately maintained her original position that she be made the child's primary residential parent and the sole decision-maker. At the end of the first day of the hearing, the court shifted legal custody of the child back to the Department due to mother's lapse but maintained placement with mother, citing concern about the effects of disrupting the child's attachment.

¶ 7　　A week after the first day of the APR hearing, the court held a contested placement hearing. Based on concerns that mother's unconfirmed urinalysis (UA) screening was positive for "meth/amphetamines," that mother refused to send the child's necessary medical supplies for father's visitation, and that she had been combative with the caseworker, the court shifted placement to father. The court also ordered the Department to obtain confirmed results for mother's UA screening.

¶ 8　　Subsequently, mother's UA screening was confirmed and tested positive for only what she had been prescribed. However, because other UA test results had not been confirmed by the end of the hearing, the court took the case under advisement before ruling on the APR motion.

¶ 9　　After receiving confirmed negative results for those UAs, the court issued a written ruling. The court ultimately ordered that father be the primary residential parent, have sole decision-making responsibility, and have all parenting time except for mother's eight hours of supervised parenting time each month.

## II. Discussion

### A. Standard of Review

¶ 10    Allocating parental responsibilities is a matter within the sound discretion of the juvenile court.  *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.  The juvenile court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 32.  As the trier of fact, the juvenile court determines the sufficiency, probative effect, and weight of the evidence, and assesses the credibility of witnesses.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010); *see also B.R.D.*, ¶ 15 (when there is record support for the court's findings, its resolution of conflicting evidence is binding on review).

### B. Applicable Law

¶ 11    The Colorado Children's Code authorizes a juvenile court to enter an order allocating parental responsibilities when it maintains jurisdiction in a case involving a child who has been adjudicated dependent or neglected.  § 19-1-104(6), C.R.S. 2024; *People in*

4

*Interest of E.Q.*, 2020 COA 118, ¶ 10.  When allocating parental responsibilities in a dependency and neglect proceeding, the court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2024.  *People in Interest of J.G.*, 2021 COA 47, ¶ 18.  The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served.  *Id.* at ¶ 19.  Thus, the court must allocate parental responsibilities in accordance with the child's best interests.  *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011); *see* § 19-3-507(1)(a), C.R.S. 2024.  While the court may consider the factors listed in the Uniform Dissolution of Marriage Act, section 14-10-124(1.5)(a), C.R.S. 2024, the focus must be on the protection and safety of the child and not the parents' custodial interests.  *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.

### C.    Analysis

#### 1.    Substantial Compliance Finding

¶ 12    We reject mother's argument that the court erred by finding that father substantially complied with his treatment plan.  Even

though the court made such a finding, it wasn't required to do so. This is because when the court allocated parental responsibilities between the parents and did not terminate parental rights, it was not required to make findings regarding parental fitness or treatment plan compliance to determine which APR was in the child's best interests. *See L.B.*, 254 P.3d at 1208 (APR must be determined in accordance with child's best interests; finding of parental unfitness not required for APR for a child adjudicated dependent or neglected); *see also* § 19-3-507(1)(a).

## 2. APR Primarily to Father

¶ 13 Mother also contends that the court erred by granting father "permanent custody" of the child. She supports her argument by citing three key points: (1) the fact that father started domestic violence treatment only two months before the APR hearing; (2) her own compliance with her treatment plan; and (3) the unconfirmed UA result that the court partially relied on when shifting temporary placement. We are unpersuaded.

¶ 14    In allocating parental responsibilities, the court found that, despite receiving services tailored to her needs during the case, mother showed minimal growth in her ability to regulate her emotions. It also found that mother tried to isolate the child from father and the Department and had a habit of delaying or cancelling father's scheduled family time. And the court found that the evidence concerning the child's "drastic decline" in condition from February 12, 2024, to her doctor's appointment the next day (February 12 incident) illustrated that mother "will not hesitate to set [the child's] needs and welfare aside to further her own desires to get back at [father]," and that she "falsif[ied] medical issues." Last, while noting that father needs to be accountable for his actions, complete required domestic violence treatment, and comply with any protection orders in effect, the court found that "the individual who is attempting to use the child as a tool to exert power and control over the other at this point is [mother]."

¶ 15    The record supports the court's findings. Mother admitted that she used methamphetamine two months before the APR

hearing because she was angry about father's weekend family time and feeling that he was being "favor[ed]" in this case. And the court heard the following evidence:

- According to an expert in domestic violence, a parent can use children as a form of power and control and examples of this behavior include (1) falsifying medical issues to discredit the other parent and (2) engaging in a pattern of interfering with the other's family time.

- Mother loudly announced, in the lobby of the facility hosting father's virtual family time, that she wanted to see father in a casket.

- Mother cancelled or delayed father's family time multiple times for varying reasons.

- After the first day of the APR hearing, mother cancelled several medical appointments for the child and attempted to cancel father's fiancee's g-tube training.

- Before two of father's family time sessions at the hospital (where the child had been admitted on several occasions

8

throughout the case), mother indicated she was leaving the hospital over frustration about father's visits.

- On other occasions preceding father's family time at the hospital, mother told the caseworker the child had been discharged (when the caseworker later learned the child was still admitted) and reported to the police that father violated the protection order restraining him from contact with her, although it didn't result in his arrest.

¶ 16    The court also heard testimony about the February 12 incident.  On that date, which marked the end of father's first weekend visit, the caseworker transported the child from Denver to mother's home in Alamosa.  The caseworker and father testified that the child was in a good condition on that day, her hygiene was appropriate, her g-tube site was clean, and father had replaced the tubing on that day.  The caseworker, who changed the child's diaper during the trip, didn't notice significant diaper rash, only that the area was "a little red."  After being in mother's care for roughly twenty-four hours, mother took the child to a doctor's

appointment with concerns about her treatment in father's care. The treating pediatrician testified that on February 13, there was crusted drainage around the child's g-tube site, her g-tube hadn't been flushed regularly, and she had a severe diaper rash with sores. And the pediatrician testified that mother reported she learned from father that he hadn't flushed the child's g-tube over the weekend. However, father testified that he didn't say that to mother and that the g-tube had to be flushed after every feeding.

¶ 17    The court also found, with record support, that mother was the only one in her circle trained to care for the child's medical needs, she struggled to make all of the child's appointments, and the hospital near her in Alamosa wasn't equipped to meet the child's needs. In contrast, the court found, with record support, that (1) father, his fiancee, and his mother were trained in how to care for the child; (2) his fiancee was working toward certification as a parent certified nursing assistant; (3) father lived twenty minutes from Children's Hospital in Denver; and (4) father took steps at unnecessary cost to ensure that the child's needs were met when

10

mother didn't provide the child's necessary medical supplies, such as her glasses or hearing aids.

¶ 18    We reject mother's arguments regarding father's domestic violence treatment, her treatment plan compliance, and the unconfirmed UA result because she essentially asks us to reweigh the evidence, which we can't do. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62. It is exclusively within the juvenile court's purview to resolve conflicting evidence. *See B.R.D.*, ¶ 15; *A.J.L.*, 243 P.3d at 249-50. And the court's weighing of the evidence led it to explicitly conclude that granting an APR primarily to mother created too high a risk to the child's safety "where there is no support network in place, medical facilities are limited, and where [mother] will continue to have to confront the stressful reality that [father] is entitled to parenting time." We reiterate that treatment plan compliance isn't determinative as the sole question before a court when it determines which APR is in the child's best interests. *See L.B.*, 254 P.3d at 1208. Moreover, neither the APR ruling nor the wider record suggest that the juvenile court relied on the

11

unconfirmed UA result in permanently allocating parental responsibilities.

¶ 19     We also reject mother's argument that the court's judgment does not fulfill the Children's Code purpose of ensuring the child's safety. *See J.G.,* ¶¶ 18-19. To the contrary, the court's ruling centered the child's safety and welfare. As discussed above, the court explicitly described the heightened risk to the child's safety of making mother the primary residential parent and decision-maker. Importantly, the court noted that the February 12 incident would raise "significant safety concerns" for any child but was even more troublesome given how medically fragile and complex the child is.

### 3.     Holding Judgment in Abeyance

¶ 20     Last, mother asserts that "safety concerns" for the child remained at the time of the APR hearing and thus the court should have held its ruling in abeyance to allow the Department to address these concerns. Its failure to do so, she summarily asserts, amounted to a "fail[ure] to comply with the requirements of the Children's Code." Mother doesn't say what these concerns were nor

12

does she provide citations to the record or say which requirements of the Children's Code the court purportedly violated.  Because she failed to develop this argument, we decline to address it on appeal. *See People in Interest of D.B-J.,* 89 P.3d 530, 531 (Colo. App. 2004) (declining to address an appellate argument presented without supporting facts, specific argument, or specific supporting authorities); *see also* C.A.R. 28(a)(7)(B) (argument section of appellant's brief must contain "citations to the authorities and parts of the record on which the appellant relies").

¶ 21    In sum, because the court's APR determination has record support, and because it correctly applied the law, we discern no abuse of discretion.  *See M.A.W.,* ¶ 32; *B.R.D.,* ¶ 15.

### III.    Disposition

¶ 22    We affirm the judgment.

JUDGE BROWN and JUDGE YUN concur.