25CA0732 People in Interest of LJ 10-09-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0732
Arapahoe County District Court No. 24JV5
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of L.J. and J.D.J., Children,

and Concerning L.S.,

Appellant,

and

J.M.J.,

Appellee.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 9, 2025

---

Ron Carl, County Attorney, Erinn E. Walz, Assistant County Attorney, Aurora, Colorado, for Appellee the People of the State of Colorado

Angela M. Compton, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellee J.M.J.

¶ 1     In this dependency and neglect proceeding, L.S. (mother) appeals the judgment allocating parental responsibilities for L.J. and J.D.J. (the children) to J.M.J. (father). We affirm.

## I.     Background

¶ 2     The Arapahoe County Department of Human Services filed a petition in dependency or neglect based, in part, on allegations that mother was using substances in the presence of the children. The children — then two and three years old — were placed with father.

¶ 3     Mother entered an admission to the petition, and the juvenile court adjudicated the children dependent and neglected. The court then adopted a treatment plan for mother requiring her to (1) stay in contact with the Department; (2) attend family time; (3) obtain employment or other legal income; (4) provide random weekly urinalysis tests and complete a substance evaluation and recommended treatment; (5) participate in a parent education program; and (6) provide a safe and stable residence for the children.

¶ 4     Father moved for an allocation of parental responsibilities (APR), a request supported by the Department and the children's guardian ad litem. After an evidentiary hearing, the court granted

an APR to father and ordered a step-up plan beginning with supervised family time for mother.

## II.     Discussion

### A.     Applicable Law and Standard of Review

¶ 5     When allocating parental responsibilities in a dependency and neglect proceeding, the court must consider the legislative purposes of the Children's Code. *People in Interest of J.G.*, 2021 COA 47, ¶ 18. The overriding purpose of the Children's Code is to protect children's welfare and safety by providing procedures through which the children's best interests can be served. *Id.* at ¶ 19. Thus, any allocation of parental responsibilities must prioritize the children's best interests. *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011); *see* § 19-3-507(1)(a), C.R.S. 2025. While the court may consider the factors listed in the Uniform Dissolution of Marriage Act, section 14-10-124(1.5)(a), C.R.S. 2025, the focus remains on the protection and safety of the children, rather than the parents' custodial interests. *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.

¶ 6     Although a juvenile court must find that a parent is unfit and cannot become fit within a reasonable time before it may terminate

2

parental rights, no such finding is required before a court may allocate parental responsibilities. *See People in Interest of M.D.*, 2014 COA 121, ¶ 44; *L.B.*, 254 P.3d at 1208. Nonetheless, a parent's unfitness may still be a compelling reason not to return a child to that parent. *See M.D.*, ¶ 43.

¶ 7 The allocation of parental responsibilities is a matter within the juvenile court's discretion. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

¶ 8 The credibility of witnesses, the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the juvenile court's discretion. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). And when the juvenile court's findings have record support, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15. But whether the court applied the correct legal standard in making its findings is a question of law that we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

### B.   *Troxel* Presumption

¶ 9    As a preliminary matter, mother asks us to apply the *Troxel* presumption that a fit parent acts in the children's best interests. *See Troxel v. Granville*, 530 U.S. 57, 68-69 (2000).  However, even setting aside the question of whether mother was fit, Colorado cases have thus far limited the *Troxel* presumption to situations where child custody and decision-making are awarded to a nonparent over the objection of a parent.  *See J.G.*, ¶ 21 (citing *Troxel* for the proposition that "in proceedings between a parent and nonparent, the parent is entitled to a constitutional presumption that the parent acts in the child's best interests"); *see also In re B.J.*, 242 P.3d 1128, 1133-34 (Colo. 2010) (same); *N.G.G.*, ¶ 15 (same).

¶ 10   Here, the decision-making, parenting time, and custody determinations were only between the parents.  Mother does not direct us to any authority that requires a court to apply *Troxel* in an APR between two parents, and we are not aware of any such authority.

### C.   Fitness and Endangerment

¶ 11   Mother argues that the juvenile court abused its discretion by awarding custody and decision-making authority to father because

there was no evidence that mother was unfit or that the children's health and safety were at risk.

¶ 12    Initially, we reject mother's misplaced reliance on section 14-10-129(1)(b)(I). That section addresses the court's authority to modify an existing parenting time schedule; it does not apply to an initial parenting time order. In an APR proceeding under title 19, the court is not required to find that a parent is unfit or that the children's health and safety are at risk; rather, the focus is on the best interests of the children. *See L.B.*, 254 P.3d at 1208 (the adjudication of children as dependent and neglected provides the predicate for a disposition to enter; no finding concerning either unfitness or endangerment is necessary); *see also M.D.*, ¶ 44 ("[T]he court may award visitation to nonparents, notwithstanding the opposition of a parent, without demonstrating parental unfitness or significant harm to the child.").

¶ 13    The juvenile court nonetheless found that "significant concerns" remained for the children's safety because of mother's substance use and her "continued escalation" in the presence of the children. And, although we acknowledge the court did not specifically find that mother was unfit, it did so implicitly, stating it

hoped that she could "become a fit parent." The record supports the court's findings.

¶ 14 The caseworker testified that the petition was filed because mother was using substances, including methamphetamine and fentanyl, in the presence of one of the children; left drug paraphernalia, such as pipes and needles, scattered throughout the home; and left the child unattended in a highchair for several hours. The juvenile court took judicial notice of a criminal case in which mother was originally charged with possession of methamphetamine and fentanyl but ultimately pled guilty to a lesser count of possession of drug paraphernalia. And mother admitted to the caseworker that she was using alcohol and that the child "got ahold of [an] alcohol shooter" while in her care.

¶ 15 Mother agreed to a treatment plan but did not successfully complete any treatment plan objectives. The caseworker testified that mother was given nine months to work on the plan, but mother, among other things,

- provided no documentation that she completed a substance abuse evaluation or treatment;
- completed no urinalysis tests;

6

- did not consistently display protective parenting skills;

- did not follow the recommendations of the parenting time program;

- failed to meet with the caseworker consistently and, at times, "had problem[s] with communication";

- provided no documentation of income; and

- was struggling with housing.

¶ 16    In addition to safety concerns raised by mother's noncompliance with the treatment plan, the family time coach was concerned about mother's inability to manage her emotions around the children.  The coach testified that mother raised her voice at the children when frustrated or angry, made inappropriate remarks about father to the children, and yelled at or insulted the coach, the coach's supervisor, and father in the children's presence.  When the coach attempted to intervene and redirect mother, her escalation intensified.

¶ 17    The coach also testified that the children exhibited "a lot of dysregulated behaviors" and mother struggled to manage both children simultaneously.  The coach had to intervene during family

time to protect the children's "overall safety and wellbeing" because the children fought a lot and got "physical with each other."

¶ 18 Ultimately, the coach opined that mother's contact with the children should remain supervised. And the caseworker opined that the proposed APR served the children's best interests because it adequately addressed the safety concerns.

¶ 19 On this record, we perceive no abuse of discretion in the juvenile court's conclusion that granting an APR primarily to father was in the children's best interests. *See E.B.*, ¶ 14.

## D. Delegation

¶ 20 Next, mother argues that the juvenile court improperly delegated discretion over mother's family time to father and third-party supervisors. We disagree.

¶ 21 It is well settled that "[o]nly the court has the authority to allocate parenting time." *B.J.*, 242 P.3d at 1133. A juvenile court may not delegate decisions regarding the exercise of parenting time to third parties or to one parent when the issue of parenting time is contested. *In re Marriage of Hatton*, 160 P.3d 326, 334 (Colo. App. 2007); *see also People in Interest of B.C.*, 122 P.3d 1067, 1070-71

(Colo. App. 2005) (noting that a court must make decisions about parenting time and may not delegate this function to others).

¶ 22    The APR judgment states that:

> (a) [Mother's] family time must be supervised by a third party agreed upon by herself and [father].  If a third party is not available, or cannot be agreed upon, [mother's] parenting time must be professionally supervised by a professional visitation agency at her sole expense.  Any professional visitation agency utilized must be approximately equidistant between each parent's residence.
>
> (b) [Mother] will be entitled to a minimum of ten hours of family time per week, if the agreed-upon third party or professional visitation agency is willing to provide her with a total of ten hours each week.

¶ 23    Mother argues that this language effectively gives father veto power over the manner of her contact with the children.  But mother's argument overlooks the provision that ensures she will receive family time even if father vetoes her choice of third-party supervisor by providing that "if a third party . . . cannot be agreed upon," mother's family time "must be supervised by a professional visitation agency."  The APR does not give father discretion to withhold consent for the professional visitation agency.  And mother

9

is "entitled to a minimum of ten hours of family time per week" if the "professional visitation agency is willing to provide" ten hours.

¶ 24    Mother also argues that the APR improperly conditions her family time on the approval of professional supervisors. Though inartfully worded, these APR provisions allow mother to select a professional visitation agency that is "approximately equidistant" from each parent and to have a minimum of ten hours of parenting time at that agency each week. As with any other parenting time order, if the selected agency cannot accommodate the minimum hours, mother is free to seek an alternative agency that can.

¶ 25    Thus, we do not read these provisions as improperly delegating the juvenile court's responsibility to make decisions about parenting time. *See B.C.*, 122 P.3d at 1070-71.

E.    Mother's Remaining Contention

¶ 26    Finally, mother contends throughout the opening brief that father engaged in "tactical gamesmanship" to withhold her family time and, for that reason, should not have been granted an APR. This argument essentially asks us to reweigh the evidence, a role beyond our authority. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 62 (we cannot reweigh the evidence or substitute our

judgment for that of the juvenile court); *A.J.L.*, 243 P.3d at 250 ("[I]t is important to defer to the [juvenile] court . . . when it hears contradictory testimony on material issues.").

¶ 27 The juvenile court acknowledged mother's "frustration with the domestic case" and that the case had been "contentious throughout the years." Nevertheless, the court found it necessary to "step back from that" history and consider it only for "context about the family." And the family time coach testified that she saw no evidence to support mother's allegation that father was trying to limit her visitation with the children.

¶ 28 Because the court's findings are supported by the record, its resolution of the evidence is binding on review. *See B.R.D.,* ¶ 15.

### F. Conclusion

¶ 29 In sum, the record supports the juvenile court's findings, and its APR based on those findings was neither a misapplication of the law nor manifestly arbitrary, unreasonable, or unfair. Accordingly, the court did not abuse its discretion. *See E.B.*, ¶ 14; *B.R.D.,* ¶ 15.

### III. Disposition

¶ 30 The judgment is affirmed.

JUDGE FREYRE and JUDGE PAWAR concur.