25CA0876 Peo in Interest of MR 12-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0876
Weld County District Court No. 24JV43
Honorable W. Troy Hause, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of M.R., a Child,

and Concerning B.E.S.,

Intervenor-Appellant,

and

T.R. and R.L.,

Intervenors-Appellees.

---

JUDGMENT AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Martinez* and Hawthorne*, J.J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Harwich Brickey, LLC, Kara M. Harwich, Fort Collins, Colorado for Intervenor-Appellant

Ross Law, P.C., Joe Ward, Centennial, Colorado for Intervenors-Appellees


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1　　In this dependency and neglect proceeding, B.E.S. (maternal aunt) appeals the juvenile court's judgment allocating parental responsibilities for M.R. (the child) to T.R. and R.L. (the godparents). We affirm.

## I.　Background

¶ 2　　The Weld County Department of Human Services opened this case because the child's mother was tragically killed by her boyfriend. The child, who was five years old at the time, witnessed his mother's death. The child had no relationship with his biological father, T.C. (father). Shortly after the case opened, the child was placed with his godparents, who are also his maternal great aunt and uncle.

¶ 3　　At the same time that the child was adjudicated dependent or neglected, the court granted maternal aunt's request to intervene. Maternal aunt, who lived in Kansas throughout the case, later requested that the child be placed with her. Around the same time, the court permitted the godparents to intervene.

¶ 4　　The court later held an evidentiary hearing concerning placement and the allocation of parental responsibilities (APR). Eleven months after the case opened, the court granted an APR to

the godparents. The court allocated maternal aunt one weekend per month of parenting time during the school year, as well as two one-week periods during the summer.

## II.    Discussion

¶ 5    Maternal aunt contends that the juvenile court misapplied the law and abused its discretion by granting an APR to the godparents. We are not persuaded.

### A.    Relevant Law and Standard of Review

¶ 6    When allocating parental responsibilities in a dependency and neglect proceeding, a juvenile court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2025. *People in Interest of J.G.*, 2021 COA 47, ¶ 18. The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served. *Id.* at ¶ 19. Thus, if a court allocates parental responsibilities, it must do so in accordance with the child's best interests. *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011); *see* § 19-3-507(1)(a), C.R.S. 2025.

¶ 7    The allocation of parental responsibilities is a matter within the juvenile court's discretion. *See In re Parental Responsibilities*

*Concerning B.R.D.*, 2012 COA 63, ¶ 15. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14. The witnesses' credibility, the evidence's probative effect and weight, and the inferences and conclusions to be drawn from the evidence are within the juvenile court's discretion. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). When the record supports the juvenile court's findings, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15. Whether the court applied the correct legal standard is a question of law that we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

B.     The Juvenile Court Made Sufficient Findings for Review

¶ 8      As a threshold matter, we reject maternal aunt's claim that the juvenile court made insufficient findings for appellate review. A juvenile court must make sufficiently explicit factual findings to give an appellate court a clear understanding of the basis of its order. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9. Such is the case here. While the court made factual findings in both its oral and written rulings, it made more exhaustive factual findings in its oral

3

ruling. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 9 n.1 (recognizing that a court's oral findings may supplement its written order).

¶ 9     Yet, maternal aunt bases her argument solely on the court's written ruling. She does not address the court's oral ruling, the transcript of which was not made a part of the appellate record until after the parties submitted their briefs. Maternal aunt did not designate that transcript in her notice of appeal, despite an appellant's obligation to include in the record "transcripts of all proceedings necessary" for deciding the appeal. *See* C.A.R. 10(d)(3). On review of both the oral and written ruling, we clearly understand the basis for the court's judgment.

### C.     The Juvenile Court Did Not Misapply the Law

¶ 10     Maternal aunt contends that the court misapplied the law because it did not "mak[e] the specific . . . findings that Title 19 and section 14-10-124, C.R.S. 2025 require." We are not persuaded.

¶ 11     While the godparents dispute that maternal aunt preserved this issue for review, we need not resolve this question because, regardless of preservation, we perceive no error in the court's application of the law. *Cf. L&R Expl. Venture v. Grynberg*, 271 P.3d

530, 536 (Colo. App. 2011) (declining to resolve an issue where the outcome wouldn't change).

¶ 12    Maternal aunt first asserts that the court was required to consider section 14-10-124(1.5) and make findings under the factors in that statutory subsection. But the APR in this case arose within a dependency and neglect proceeding, which is governed by the Children's Code, not the Uniform Dissolution of Marriage Act. *See L.B.*, 254 P.3d at 1208. Thus, the court was "not required to apply the best interests factors specifically listed under section 14-10-124(1.5)." *Id.*

¶ 13    Relying exclusively on the court's written order, maternal aunt next asserts that the court failed to make findings required by the Children's Code. She also points out that the court did not explain why its decision diverged from the guardian ad litem's recommendation in the juvenile court and contends that the court "identified no concrete harms linked to" the child residing with her.

¶ 14    The Children's Code does not require a court to make any specific findings before entering an APR. Rather, as noted, a juvenile court must designate an APR in accordance with the child's best interests. *See id.* The court did so here. After the court

indicated that it was guided by the Children's Code and highlighted certain legislative purposes underlying the Code, its ruling focused on the child's best interests and welfare. The court's ruling reveals that it considered the objective of preserving family ties, *see* section 19-1-102(1)(b), as it reasoned that most of the child's supports, "meaning the family and their supports," were located in Colorado.

¶ 15    Nor are we persuaded by maternal aunt's claim that the court's order "[fell] back on generalized 'under six' bonding notions." To the contrary, the court appropriately applied the expedited permanency planning (EPP) provisions because the child was under six when the petition was filed. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025. In doing so, the court acknowledged that it was guided by the General Assembly's recognition that "children undergo a critical bonding and attachment process prior to the time they reach six years of age." *See* § 19-1-102(1.6).

¶ 16    Thus, the court correctly applied the law in determining the APR.

D.    The Juvenile Court Did Not Abuse Its Discretion

¶ 17    Maternal aunt asserts that the court abused its discretion in granting the APR to the godparents. We are unconvinced.

6

### 1. The Record Supports the Juvenile Court's Findings

¶ 18    The court found, with record support, that the child was doing well in his placement with the godparents and would do well with maternal aunt, all parties were fit, and both homes were appropriate. It was undisputed that the child had adjusted well to his placement with the godparents and to his new school. And the child's therapist testified that he was "doing extremely well" in therapy. The Department had no child protection concerns about the child with either set of relatives and took no specific position about the APR. And maternal aunt's home was an approved placement under the Interstate Compact on Placement of Children.

¶ 19    However, the court found that most of the child's "supports" were located in Colorado. And it found that the child's ongoing placement with the godparents was supported by father and B.G., who was mother's "off and on" boyfriend for several years, and who the court deemed the child's psychological father. The court also found that mother's choice of the godparents "[a]s the future custodians of the child should anything happen to [her]" was deliberate, and that she promoted the godparents' relationship with the child while she was alive.

¶ 20    The record supports these findings and shows that, during the child's placement with the godparents in Conejos County, the child regularly visited with extended family nearby and with other loved ones during their visits to the area.  Also, the child attended school with some of his cousins.  Further, B.G. resided in Colorado and maintained consistent contact with the child.  Father, who was working with a reunification therapist with the aim of establishing a relationship with the child, also lived in Colorado.  On the other hand, the child did not have family members in Kansas, other than maternal aunt and her children and husband.

¶ 21    In addition, B.G. testified that mother wanted the child to be cared for by the godparents "if anything . . . ever happened to her."  B.G. stated that is "what [he] wanted to[o]" and described the godparents as the child's "second home."  Father also supported the child remaining in his placement with the godparents.  And multiple witnesses, such as mother's long-time friend, testified that the child and mother had a close relationship with the godparents while mother was living.

2. The Juvenile Court Did Not Err by Determining That Another Move Would Be "[D]etrimental" to the Child's Best Interests

¶ 22　The court determined that "another move would be detrimental to [the child's] best interests," and based the APR in part on that determination. It elaborated in its oral ruling that another move would be "an additional loss" and "difficult" for the child. Maternal aunt contends that the court erred by making its "detrimental" determination because the "record does not bear [it] out." We are not convinced.

¶ 23　The child had already lost his mother, and the court referenced the trauma he had endured. The record shows that the child had been in his placement with his godparents — whom he had a long-term relationship with — for nearly a year at the time of the APR hearing. Father testified that "to uproot [the child] again . . . could be traumatizing to him . . . to have to start all over again, when he is making ground out where he's at now." More generally, one godparent (R.L.) testified that the child had started to "blossom socially" and had been participating in extracurricular activities.

¶ 24    We are not persuaded by maternal aunt's reliance on the caseworker's testimony that she didn't believe that the child changing therapists in the event of a move would be "detrimental." While maternal aunt accurately describes that portion of the caseworker's testimony, the caseworker also testified that "it's generally better . . . for children to have a consistent service team." The child's therapist, who had been working with him for ten months at the time of the APR hearing, would not have been able to continue working with him if he moved to another state.

¶ 25    Moreover, the court was required to place the child as expeditiously as possible in this EPP case. *See* §§ 19-1-102(1.6), 19-3-702(5)(c).

¶ 26    Maternal aunt also summarily states that the court "treated general 'stability' as if it were dispositive." The court's ruling reveals no such treatment by the court; instead, the court appropriately rendered its APR decision based on the child's best interests. *See* Part C. Because maternal aunt has not developed any specific argument on this issue, we don't address it further. *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to

address an issue where a party didn't "make specific arguments" in support of it).

### 3. The Juvenile Court's Allocation of Decision-Making Responsibility Was Not an Abuse of Discretion

¶ 27 Maternal aunt next contends that excluding her "entirely from decision-making, without factor-tied reasons [under section 14-10-124(1.5)(b)], is an abuse of discretion." This argument fails because, as explained, the court did not have to make findings under section 14-10-124(1.5). *See* Part C.

### 4. The Juvenile Court Did Not Delegate the Determination of Maternal Aunt's Parenting Time

¶ 28 Maternal aunt argues that the court erroneously delegated the determination of her parenting time to the godparents. *See People in Interest of D.G.*, 140 P.3d 299, 302 (Colo. App. 2006) (the juvenile court must make decisions about parenting time and may not delegate this function to third parties). While maternal aunt's argument is unclear, she challenges the specific provision in the court's order that states, "if the Child is off of school on a Friday and/or a Monday, the Parties shall work to secure longer weekend visits with" maternal aunt. The scenario maternal aunt discusses is

11

one in which the child has an extended weekend that happens to fall on her monthly weekend of parenting time.

¶ 29     The court did not delegate to the godparents the decision of whether maternal aunt receives additional time on these specific days but, rather, instructed the parties that maternal aunt shall receive longer visits when the child's extended weekends off school fall on her parenting time.

¶ 30     Moreover, the caseworker testified that, while she "had to intervene frequently" with respect to scheduling parenting time, the parties had "cooperated; the family time ha[d] always been facilitated." Likewise, while the court acknowledged the "high conflict and division of the family, which predated [mother's] tragic death," the parties stipulated that, during the case, the child had video visits with maternal aunt three times a week, as well as ten multi-day, in-person visits. *Cf. In re Marriage of Tibbetts*, 2018 COA 117, ¶ 25 (noting that a general parenting time order that leaves the specifics to the parents to work out may be permissible in cases where the evidence indicates the parents are willing and able to cooperate on parenting time).

¶ 31    Accordingly, we need not reach the godparents' and the Department's arguments that the delegation doctrine does not apply in this case because maternal aunt is not the child's parent.

### 5.    We Don't Reweigh the Evidence

¶ 32    Several times throughout her brief, maternal aunt essentially requests that we reweigh the evidence and reach a different result. But we do not reweigh the evidence, nor do we substitute our judgment for the juvenile court's. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29; *see also A.J.L.*, 243 P.3d at 250 ("[I]t is important to defer to the [juvenile] court . . . when it hears contradictory testimony on material issues.").

¶ 33    Because the court rested its determination on findings that are supported by the record, its resolution of the evidence is binding on review. *See B.R.D.*, ¶ 15. Based on these findings, the court concluded that an APR to the godparents was in the child's best interests. On this record, we perceive no abuse of discretion in its decision. *See E.B.*, ¶ 14.

### III.    Disposition

¶ 34    The judgment is affirmed.

JUSTICE MARTINEZ and JUDGE HAWTHORNE concur.