COLORADO COURT OF APPEALS                                        **2017COA70**

Court of Appeals No. 16CA0975
Weld County District Court No. 15JV278
Honorable Elizabeth B. Strobel, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of H.K.W., a Child,

and Concerning J.W. and A.M.,

Respondents-Appellants,

and

T.K. and J.M.,

Intervenors-Appellees.

ORDER

Division II
Opinion by JUDGE DAILEY
J. Jones and Berger, JJ., concur

Announced May 18, 2017

No Appearance for Petitioner-Appellee

Scott A. Jameson, Guardian Ad Litem

Carrie Ann Lucas, Windsor, Colorado, for Respondent-Appellant J.W.

Hopkins Law, LLC, Laurie L. Strand, James W. Hopkins, Loveland, Colorado, for Respondent-Appellant A.M.

Law Office of Keren C. Weitzel, LLC, Keren C. Weitzel, Longmont, Colorado, for Intervenors-Appellees

¶ 1    In this dependency and neglect proceeding, J.W. (father) and A.M. (mother) appeal the trial court's judgment allocating parental responsibilities of their daughter, H.K.W. (the child), to J.M. and T.K. (special respondents).

¶ 2    This case involves matters of first impression, to wit: (1) whether a trial court may conduct an in camera interview with a child who is the subject of an allocation of parental responsibilities proceeding arising from a dependency and neglect action; and, if the trial court conducts such an interview, (2) whether the court must cause a record of the interview to be created and then make that record available to the parents.

¶ 3    We conclude that the Children's Code permits a trial court to conduct an in camera interview with a child, and that due process requires that a record of the interview be created and, at least in certain circumstances, be made available upon request to the parents.  Because the trial court in this case relied on the in camera interview of the child while denying the parents access to a transcript of that interview, we order that the record on appeal be supplemented with the transcript of the in camera interview.  We further order that the parties be allowed to file supplemental briefs

1

addressing whether the trial court's findings of fact from the interview are supported by the record. We will issue an opinion addressing the merits of the appeal following the completion of supplemental briefing.

## *I. Background*

¶ 4    The Weld County Department of Human Services (the Department) filed a dependency or neglect petition regarding the six-year-old child based on allegations of father's and mother's substance abuse; that the child had seen mother's boyfriend being kidnapped from the home; that the child had missed a lot of school; and that the family had been involved in two prior dependency and neglect cases because of substance abuse, lack of supervision, and domestic violence. The child was removed from the home and initially placed with father. Three days later, the child was placed with the special respondents. Notably, in the prior dependency and neglect cases, the child also had been placed with the special respondents.

¶ 5    Based on father's and mother's admissions, the trial court adjudicated the child dependent or neglected. The court adopted treatment plans, with which father and mother complied.

2

¶ 6 Father, mother, and the special respondents later moved for an allocation of parental responsibilities. At a hearing, the child's guardian ad litem (GAL) moved for an in camera interview with the child.[1] None of the parties objected. The trial court agreed to interview the child and told the parties that it would have a record made of the in camera interview and that a transcript of the interview would be sealed unless "the matter is appealed." Again, none of the parties objected.

¶ 7 Shortly thereafter, the trial court conducted an in camera interview with the child. The interview was recorded but not transcribed. None of the parties requested a transcript of the interview.

¶ 8 After a subsequent hearing, the trial court found as follows:

- the child had been the subject of three dependency and neglect cases;

- the child told the court that she wanted to stay with the special respondents;

---

[1] The GAL filed a written motion to that effect as well after the hearing.

3

- the child's primary attachment and bond was with the special respondents;

- the child needed stability and permanency;

- even though father and mother had complied with their treatment plans, they were unfit;

- father and mother had criminal histories that included domestic violence and child abuse;

- father and mother had not demonstrated sobriety, stability, and ongoing parental consistency "for a decent enough period of time"; and

- father and mother had exposed the child to domestic violence, drug addiction, and a criminal lifestyle, and had neglected the child's needs "for too long."

¶ 9  In making its findings, the trial court relied extensively on the child's statements during the in camera interview. The court then allocated parental responsibilities to the special respondents and set forth a parenting time schedule for father and mother.

¶ 10  Father and mother appealed, and father requested a transcript of the trial court's in camera interview of the child. Although it had

previously indicated that it would do otherwise, the trial court denied father's motion.[2]

## II.  Interviewing the Child and Making a Record Thereof Available to the Parents

¶ 11     Father and mother contend that the trial court erred by relying on the in camera interview with the child, which was not admitted into evidence, as the basis for its decision to allocate parental responsibilities to the special respondents.  In particular, they assert that their due process rights were violated because, without access to the transcript of the interview, they were unable to contest the courts findings or the information on which the court relied in making its findings.  We agree in part.

¶ 12     In dependency and neglect proceedings, the trial court has jurisdiction to allocate parental responsibilities between parents and nonparents.  §§ 19-1-104(4), (6); 19-3-508(1)(a), C.R.S. 2016; *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1390-91 (Colo. 1996).

¶ 13     Under the Children's Code, the trial court must allocate parental responsibilities based on the best interests of the child and

---

[2] A single judge of this court also denied a motion for access to the transcript.

5

the public. § 19-3-507(1)(a), C.R.S. 2016; *L.A.G.*, 912 P.2d at 1391 (In determining custody, "a juvenile court must fashion a custodial remedy that serves the public as well as the best interests of the child."). The court may consider the best interest factors listed in the Uniform Dissolution of Marriage Act (UDMA), section 14-10-124(1.5)(a), C.R.S. 2016, as long as the focus is on the protection and safety of the child and not on the "custodial interests" of the parents. *L.A.G.*, 912 P.2d at 1391-92; *People in Interest of M.D.*, 2014 COA 121, ¶ 12; *People in Interest of C.M.*, 116 P.3d 1278, 1282 (Colo. App. 2005). As now relevant, the court may consider the "wishes of the child if he or she is sufficiently mature to express reasoned and independent preferences as to the parenting time schedule." § 14-10-124(1.5)(a)(II).

### A. *Was the Court Allowed to Interview the Child?*

¶ 14 The Children's Code does not contain a provision specifically allowing a court to conduct an in camera interview with a child. However, under section 19-1-106(5), C.R.S. 2016, a child "may be heard separately when deemed necessary" by the court.

¶ 15 In contrast, the UDMA specifically provides that the "court may interview the child in chambers to ascertain the child's wishes

as to the allocation of parental responsibilities." § 14-10-126(1), C.R.S. 2016.

¶ 16    We have acknowledged that the UDMA procedures are not always useful in accomplishing the goals of the Children's Code. *People in Interest of D.C.*, 851 P.2d 291, 294 (Colo. App. 1993) (a dependency and neglect proceeding concerns different matters and fulfills a different purpose than a UDMA proceeding).  However, given that a trial court may consider a child's separately stated wishes when deciding how to allocate parental responsibilities in both a dependency and neglect proceeding and a UDMA proceeding, looking to the UDMA in this instance is helpful.  *See B.G.'s, Inc. v. Gross*, 23 P.3d 691, 694 (Colo. 2001) (consideration of other statutes dealing with the same subject can be useful in deciding questions of statutory interpretation).

¶ 17    Reading sections 19-1-106(5) and 14-10-126 together, we conclude that a trial court is permitted to conduct an in camera interview with a child to determine a child's best interests and how to allocate parental responsibilities within a dependency and neglect proceeding.

¶ 18     Our conclusion in this regard is bolstered by recognizing that permitting an in camera interview with a child would enable the trial court to ascertain the child's custodial preference while (1) lessening the ordeal for the child by eliminating the harm a child might suffer from exposure to the adversarial nature of the proceedings; (2) enhancing the child's ability to be forthcoming; and (3) protecting the child from the "tug and pull of competing custodial interests." *Ynclan v. Woodward*, 237 P.3d 145, 150-51 (Okla. 2010).

    B.     *Was the Court Required to Create a Record of the Interview?*

¶ 19     The Children's Code does not address whether a record of an in camera interview with a child must be made. The UDMA, in contrast, requires the trial court to "cause a record of the interview to be made, and it shall be made part of the record in the case." § 14-10-126(1).

¶ 20     Case law from numerous other jurisdictions parallels the UDMA requirement. *See Ex parte Wilson*, 450 So. 2d 104, 106-07 (Ala. 1984) (due process requires that in camera interview with minor children in custody dispute be recorded); *N.D. McN. v. R.J.H.*, 979 A.2d 1195, 1201 (D.C. 2009) (due process and state statute

8

require that an in camera interview with the children be recorded); *Strain v. Strain*, 523 P.2d 36, 38 (Idaho 1974) (in camera interview with the children must be recorded to determine if the interview supports the trial court's decision); *Hutchinson v. Cobb*, 90 A.3d 438, 442 (Me. 2014) (trial court is responsible for recording in camera interviews); *In re H.R.C.*, 781 N.W.2d 105, 113-14 (Mich. Ct. App. 2009) (use of unrecorded in camera interviews violates parents' due process rights); *Robison v. Lanford*, 841 So. 2d 1119, 1124-26 (Miss. 2003) (documentation of in camera interview with children must be made and be part of the record); *Williams v. Cole*, 590 S.W.2d 908, 911 (Mo. 1979) (error is presumed if a trial court interviews the children in chambers without making a record); *Donovan v. Donovan*, 674 N.E.2d 1252, 1255 (Ohio Ct. App. 1996) (requiring the trial court to make a record of an in camera interview with children involved in custody proceedings); *Stolarick v. Novak*, 584 A.2d 1034, 1038 n.1 (Pa. Super. Ct. 1991) (testimony of in camera interviews must be transcribed and made part of the record).

¶ 21    Two compelling reasons exist for requiring that a record be made of an in camera interview of a child: (1) to ensure record

support for a trial court's reliance on a child's testimony during the in camera interview; and (2) to permit meaningful appellate review of the evidence relied on by the trial court in determining the child's best interests. *See Wilson*, 450 So. 2d at 106-07; *N.D. McN.*, 979 A.2d at 1201; *Strain*, 523 P.2d at 38; *Hutchinson*, 90 A.3d at 442; *H.R.C.*, 781 N.W.2d at 114; *Robison*, 841 So. 2d at 1124-26; *Williams*, 590 S.W.2d at 911; *T.N.-S.*, 347 P.3d at 1270; *Donovan*, 674 N.E.2d at 1255; *see also Jenkins v. Jenkins*, 269 P.2d 908, 910-11 (Cal. Ct. App. 1954) (It would be wise for "the court to make a record of such interviews with children in custody cases in order to protect itself against any suspicion of unfairness on the part of the parent against whom the decision is rendered."); *cf. Kuzara v. Kuzara*, 682 P.2d 1371, 1373 (Mont. 1984) ("[T]he record and the court's findings should reflect the child's wishes" because otherwise "the interview is an empty exercise.").

¶ 22    Persuaded by these authorities, we conclude that, unless waived by the parties, a record of the interview must be made. A record of the interview was made in this case.

### C. Were the Parents Entitled
### to Access a Transcript of the Interview?

¶ 23 The next issue before us is whether the trial court must also allow the record of an in camera interview with a child to be made available to the parents. Neither the Children's Code nor section 14-10-126 addresses this issue. Nonetheless, a division of this court has held that the purpose of making a record of an in camera interview of a child is "for the benefit of the parties." *In re Marriage of Armbeck*, 33 Colo. App. 260, 261, 518 P.2d 300, 301 (1974).

¶ 24 Many jurisdictions have determined that the record of an in camera interview with a child in a custody proceeding must be made available to the parents, at least in certain circumstances. *See N.D. McN.*, 979 A.2d at 1201; *In re Marriage of Hindenburg*, 591 N.E.2d 67, 69 (Ill. App. Ct. 1992); *Holt v. Chenault*, 722 S.W.2d 897, 898-99 (Ky. 1987); *Nutwell v. Prince George's Cty. Dep't of Soc. Servs.*, 318 A.2d 563, 568 (Md. Ct. Spec. App. 1974); *Abbott v. Virusso*, 862 N.E.2d 52, 60 (Mass. App. Ct. 2007); *Callen v. Gill*, 81 A.2d 495, 498 (N.J. 1951); *Muraskin v. Muraskin*, 336 N.W.2d 332, 335 n.2 (N.D. 1983); *Inscoe v. Inscoe*, 700 N.E.2d 70, 85 (Ohio Ct. App. 1997); *Hasse v. Hasse*, 460 S.E.2d 585, 590 (Va. Ct. App.

1995); *Rose v. Rose*, 340 S.E.2d 176, 179 (W. Va. 1985); *cf. Ynclan*, 237 P.3d at 158 (to have access to the transcript of the in camera interview of the child, the parent must appeal the custody determination).

¶ 25     The following reasons favor allowing parents access to the record of the in camera interview with the child:

- The child's interview is part of a court proceeding. *N.D. McN.*, 979 A.2d at 1201.

- To the extent that a court relies on the child's statements during the interview, a parent is prejudiced by his or her inability to challenge or rebut the child's statements or contest the court's custody determination. *See Holt,* 722 S.W.2d at 899; *Inscoe,* 700 N.E.2d at 85; *Rose,* 340 S.E.2d at 179; *see also Molloy v. Molloy*, 637 N.W.2d 803, 809 (Mich. Ct. App. 2001) ("[I]nformation [from an in camera interview with the child] detrimental to the parent seeking custody may influence a judge's decision without any guarantees as to its accuracy."), *aff'd in part and vacated in part*, 643 N.W.2d 574 (Mich. 2002).

- Due process and fundamental fairness require that a parent have access to the content of the interview. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 288 n.4 (1974) ("A party is entitled, of course, to know the issues on which decision will turn and to be apprised of the factual material on which the [decision-maker] relies for decision so that he may rebut it. Indeed, the Due Process Clause forbids [a decision-maker] to use evidence in a way that forecloses an opportunity to offer a contrary presentation."); *see N.D. McN.*, 979 A.2d at 1201 ("In order to have an opportunity for meaningful presentation of evidence and argument, a litigant must have access, both in the trial court and on appeal, to the evidence that can be (or has been) used by the judge in ruling against her."); *Denningham v. Denningham*, 431 A.2d 755, 760 (Md. Ct. Spec. App. 1981) ("[O]ne of the cornerstones of our system of justice" is "the right of the parties to be aware of all of the evidence considered by the trier of fact" and "the opportunity to challenge and answer that evidence. . . . However sensitive the material may be, a party has a right

to know what evidence is being considered by the court in judging his case. A custody case can no more be tried and decided upon secret ex parte evidence than any other proceeding."); *In re T.N.-S.*, 347 P.3d 1263, 1270 (Mont. 2015) (due process requires disclosure of the transcript of an in camera interview when the trial court relies on the information from the interview in its decision); *Muraskin,* 336 N.W.2d at 335 n.2 ("A party to any procedure is entitled to know what evidence is used or relied upon and has a right generally to present rebutting evidence or to cross-examine . . . ."); *see also H.R.C.*, 781 N.W.2d at 114 (Without access to the record of the in camera interview of the child, a parent has "no opportunity to learn what testimony was elicited or to counter the information obtained, and no way of knowing how that information may have influenced the court's decision.").

¶ 26     Making the record of an in camera interview with a child available "serve[s] to protect a parent's due process rights to a fair trial, foster the state's ultimate goal of protecting the best interests of the child, and decrease the possibility that child custody

decisions will be based on inaccurate information." *Molloy*, 637 N.W.2d at 811.

¶ 27 Persuaded by these authorities, we conclude that a record of an in camera interview with a child must be made available, upon request, to parents in certain circumstances. There are, obviously, reasons why in camera interviews with children are held in the first place. Children might be intimidated by having to appear in court. They might also be reluctant to speak freely and honestly to the court if they knew that the contents of the interview would be made available to the parents as a matter of course.

¶ 28 Consequently, we limit our holding that the record of an in camera interview must be made available, upon request, to situations in which a parent needs (1) to determine whether the court's findings, insofar as they relied on facts from the interview, are supported by the record, or (2) an opportunity to contest information supplied by the child during the interview and relied on by the court. *In re T.N.-S.*, 347 P.3d at 1271 ("Due process considerations may require disclosure in certain instances, particularly where the district court relies on information from the interviews in reaching its determination.").

¶ 29    In this case, because the parents were unaware of the content of the child's in camera interview, they were unable to address, challenge, or rebut, either in a post-trial motion or on appeal, the child's statements or the trial court's findings as to the child's wishes regarding custodial preference.  However, the parents requested access to a transcript of the in camera interview only after they had filed their notice of appeal.  By not requesting access earlier (say, in a post-trial, pre-appeal motion), the parents waived their right to access the transcript for the purpose of rebutting any information presented during the interview.  They did not, though, waive their right to access the transcript for the purpose of contesting the bases for the court's findings related to the interview. The trial court erred, then, in not ordering the transcript to be made and made part of the record in this appeal.  *See Holt*, 722 S.W.2d at 899 (The parties were prejudiced by lack of access to the sealed transcript to "the extent the trial court relied on the child's statements.").

*IV. Conclusion*

¶ 30     The trial court is ordered to have the in camera interview transcribed and transmitted, as a suppressed document,[3] to this court as a supplement to the record on appeal. The supplemental record, properly certified by the trial court, is due 21 days from the date of this order. Within fourteen days of the filing of the supplemental record the parents may, if they so choose, file supplemental briefs, not to exceed 10 pages or 3,500 words, addressing whether the trial court's findings of fact from the interview are supported by the record. The other parties may file supplemental briefs in response, not to exceed 10 pages or 3,500 words, addressing the same issue within fourteen days of the filing of the parents' supplemental brief(s).

JUDGE J. JONES and JUDGE BERGER concur.

---

[3] Court records are not accessible to the public in dependency and neglect proceedings. Chief Justice Directive 05-01, Public Access to Court Records, § 4.60(b)(2) (amended October 2016). Suppressed records are ordinarily accessible only by judges, court staff, parties to the case, and if represented, their attorneys. *Id.* at § 3.08.

17