24CA1257 Peo in Interest of NRR 01-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1257
El Paso County District Court No. 23JV30402
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of N.R.R., M.R.R., and K.R.R., Children,

and Concerning I.R.P.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE BERGER*
Tow and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

---

Kenneth Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem, for N.R.R. and M.R.R.

Josi McCauley, Counsel for Youth, Superior, Colorado, for K.R.R

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this dependency and neglect action, I.R.P. (mother) appeals the judgment allocating parental responsibilities for N.R.R., M.R.R., and K.R.R (the children).[1] We affirm.

I.    Background

¶ 2    In 2019, mother and I.R.D. (father) adopted the children.

¶ 3    In March 2023, the El Paso County Department of Human Services (Department) filed a petition in dependency and neglect based on concerns about domestic violence between mother and father, mistreatment or abuse of the children, and a lack of proper parental care.[2] Legal custody of the children was placed with the Department, and the children were placed with kin.

¶ 4    The juvenile court entered a stipulated deferred adjudication as to father. The court adjudicated the children dependent and neglected as to mother. The court adopted treatment plans that

---

[1] K.R.R. turned twelve during the proceedings. Thereafter, the guardian ad litem (GAL) appointed for the children acted as counsel for youth for K.R.R. while continuing to act in her role as GAL for N.R.R. and M.R.R. For simplicity, we will refer to this attorney as the GAL.

[2] The petition also concerned mother and father's two other adoptive children, A.R.R. and J.R.R, who are the biological half-siblings of the three children at issue in this appeal. Neither A.R.R. nor J.R.R. are at issue in this appeal.

1

required both parents to (1) communicate with the professionals in the case; (2) provide the children with a safe and stable environment; (3) develop parental protective capacity; (4) address domestic violence concerns; and (5) address any mental health issues.

¶ 5     At the same time, the juvenile court ordered the children, who were placed with father's adult daughter, D.R., to return to the family home with D.R.  Father was then permitted to move back into the family home and resided there with the children and D.R. After father's return, D.R. stayed in the family home for about three months.

¶ 6     Six months after their return to the family home, the children moved into mother's home.  Mother moved for an allocation of parental responsibilities (APR) requesting that she be the children's primary residential parent and that father have parenting time every other weekend and during weekly dinners.  The parties agreed with mother's proposed APR.  However, shortly thereafter, an incident occurred between mother and K.R.R., which stemmed from a dispute about discipline.  The incident involved mother pouring or

splashing water on K.R.R. K.R.R. then ran away from mother's home and ultimately returned to father's home. All three of the children then moved back into father's home.

¶ 7 In response to the "water" incident, the guardian ad litem (GAL) filed a motion for an APR, which requested that father be the children's primary residential parent and that mother enjoy parenting time every other weekend and during weekly dinners.

¶ 8 The juvenile court held an evidentiary hearing on the competing motions and heard testimony from the caseworker, father, and mother. The Department and father supported the APR proposed by the GAL. The juvenile court largely adopted the GAL's proposed APR and determined that it was in the best interests of the children to reside primarily with father.

¶ 9 Mother now appeals.

## II. Discussion

¶ 10 Mother's sole contention on appeal is that the juvenile court abused its discretion by designating father as the children's primary residential parent. We discern no error.

### A. Applicable Law and Standard of Review

¶ 11 The Colorado Children's Code authorizes a juvenile court to enter an order allocating parental responsibilities and addressing parenting time when it maintains jurisdiction in a case involving a child who is dependent and neglected. § 19-1-104(6), C.R.S. 2024; *People in Interest of E.Q.*, 2020 COA 118, ¶ 10.

¶ 12 When allocating parental responsibilities in a dependency and neglect proceeding, the court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2024. *People In Interest of J.G.*, 2021 COA 47, ¶ 18. The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served. *Id.* at ¶ 19. Consequently, the court must allocate parental responsibilities in accordance with the child's best interests. *Id.*; *see also People in Interest of H.K.W.*, 2017 COA 70, ¶ 13 (while the court may consider the factors listed in the Uniform Dissolution of Marriage Act, section 14-10-124(1.5)(a), C.R.S. 2024, the focus must be on the protection and safety of the child and not the custodial interests of the parents).

¶ 13     An APR is within the sound discretion of the juvenile court. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.  The juvenile court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 32.  It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).  When there is record support for the court's findings, its resolution of conflicting evidence is binding on review.  *B.R.D.*, ¶ 15.

## B.  Analysis

¶ 14     The juvenile court determined that it was in the children's best interest to designate father the primary residential parent.  In support, the court found the caseworker's and father's testimony to be more credible than mother's.

¶ 15     The court found that there was a "documented pattern of physical discipline" by mother "without any remediation work having been done to address" it.  As to the "water" incident with

K.R.R., the court did not find credible mother's testimony that she splashed water on K.R.R. just to calm her down but rather found that such incident was "far more serious" than mother was willing to admit. In contrast, the court credited father's testimony that he does not use physical discipline.

¶ 16 In addition, the juvenile court found that K.R.R., who was twelve at the time of the hearing, was old enough to express her wishes and that those wishes were to "live more full-time" with father. The court also considered that it was important that the children stay together, given their history. Namely, the children had stayed together through the termination of their biological mother's parental rights, the death of their biological father, and their adoption in 2019. Relatedly, the court found that the children are well adjusted to father's home as well as to their half-siblings who reside with father.

¶ 17 The record supports the juvenile court's findings. The caseworker testified that the parties adopted the children and their two half-siblings following the death of their biological father and incarceration of their biological mother. It was undisputed that the

children began residing with the parties before their adoption in 2019.

¶ 18    The caseworker testified that the case opened due to concerns related to domestic violence as well as reports of physical discipline rising to the level of abuse.  The caseworker testified about her concern that mother continued to resort to physical discipline when she became frustrated.  Mother was compliant with her treatment plan up until the incident with K.R.R.  Following the incident, she was referred to intensive family services, but she refused to participate.  While mother testified that the relevant service provider cancelled and never rescheduled her appointment, it was undisputed that she never engaged in intensive family services.

¶ 19    Father testified that he does not use physical discipline with the children but that mother, on the other hand, had gotten "physical" with the children multiple times.  Father testified that mother would slap and push the children, and, on one occasion, a couple of the children had black eyes.  On another, mother put her foot on a child's neck.  The court allowed father to testify that

K.R.R. had expressed that mother poured water on her, kicked her in the chest, and hit her; consequently, K.R.R. ran away.

¶ 20     The caseworker opined that the children should reside primarily with father.  The caseworker testified that her opinion was based, in part, on K.R.R.'s expressed preference.

¶ 21     Father testified that, at the time of the hearing, the children resided in his home with their two half-sisters and his biological son.  He testified that the children are "very close" with their half-sisters and that his biological son is "like a big brother" for the children.  Father also testified that the children spend a lot of time with D.R. and "call her auntie."  Father testified that the children are "very responsive" with him.  He testified that the children engage in well-established routines in his home and that they are aware of their responsibilities including completing homework and picking up after themselves.

¶ 22     We reject mother's contention that the juvenile court erred because she had generally complied with her treatment plan and had historically been the children's primary caregiver.  The court found that although mother "essentially completed her treatment

8

plan . . . and was compliant, there was the incident [involving K.R.R.]" The court determined that mother's ongoing, unremedied physical discipline, paired with the importance of the children staying together, outweighed evidence that may have been in mother's favor, such as her engagement in services or her historical role as the primary caregiver. *See* § 19-1-102(1)(b) (noting that one of the purposes of the Children's Code is "[t]o preserve and strengthen family ties whenever possible").

¶ 23 Weighing of the evidence falls within the court's province as factfinder, *see A.J.L.*, 243 P.3d at 249-50, and it is not our role to reweigh the evidence or substitute our judgment for that of the juvenile court, *see People in Interest of K.L.W.*, 2021 COA 56, ¶ 62. Further, as was the case here, the court must be guided by the children's best interests, not the custodial interests of the parents. *See H.K.W.*, ¶ 13.

¶ 24 Nor do we agree with mother's argument that the incident with K.R.R. "was utilized to flip-flop the prior custody arrangement" and "was not one that warranted the significate (sic) change in designation of parenting time." In support of her contention that

9

the incident was not severe, mother points to her testimony, which was disputed at hearing, that the Department failed to follow up about the incident.

¶ 25 However, the juvenile court did not credit mother's account of the incident and, as noted above, found it was "far more serious" than she was willing to admit. The court also found mother's pattern of physical discipline had not been remedied.

¶ 26 Lastly, mother argues that father "inappropriately prevented" her from seeing the children in the wake of the incident involving K.R.R. On this issue, the juvenile court said, "I specifically find that [father] was not seeking to limit [mother's] parenting time." While noting that there may have been some confusion about parenting time following the incident, the court found, with record support, that father indeed sought clarification and permission from the professionals to ensure mother's parenting time resumed. Thus, we reject mother's argument.

¶ 27 In sum, because the juvenile court's designation of father as the primary residential parent was a determination made with

record support and the court correctly applied the law, the district court did not abuse its discretion. *See M.A.W.*, ¶ 32; *B.R.D.*, ¶ 15.

## III. Disposition

¶ 28    The judgment is affirmed.

JUDGE TOW and JUSTICE MARTINEZ concur.