25CA0608 Peo in Interest of LD 08-21-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0608
El Paso County District Court No. 21JV502
Honorable Robin Chittum, Judge

The People of the State of Colorado,

Appellee,

In the Interest of L.D., a Child,

and Concerning W.D.,

Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

Kenneth R. Hodges, County Attorney, Sara Sonsalla, Assistant County
Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for
Appellant

¶ 1    In this dependency and neglect proceeding, W.D. (father) appeals the judgment allocating parental responsibilities for L.D. (the child) to maternal grandparents.  We affirm.

## I.    Background

¶ 2    In June 2021, the El Paso County Department of Human Services filed a petition in dependency and neglect concerning the child and her sister, K.D., who is not the subject of this appeal. The Department received reports that father had threatened to kill himself, the child, and K.D., and later learned that father had been placed on a mental health hold.  In addition, the Department alleged in the petition that father had a history of mental health issues, substance abuse, and family violence.

¶ 3    Father moved to Texas shortly after the case opened and remained there for the duration of the case.  After father admitted the allegations in the petition, the juvenile court adjudicated the then eight-year-old child dependent or neglected and adopted a treatment plan for father.  Among other terms, father's treatment plan required him to address his mental health issues and substance abuse.  The child was placed with her maternal grandmother and maternal grandmother's husband (maternal

grandparents) in Michigan in May 2022, where she remained for the remainder of the case.

¶ 4     The Department moved for an allocation of parental responsibilities (APR) to maternal grandmother.  After conducting an evidentiary hearing in February 2025, the court granted the motion and ordered that father would have supervised parenting time.

¶ 5     Father appeals, claiming the court erred by awarding an APR to maternal grandparents.  We affirm.

## II.    Discussion

### A.    Applicable Law and Standard of Review

¶ 6     When allocating parental responsibilities in a dependency and neglect proceeding, a juvenile court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2024.  *People in Interest of J.G.*, 2021 COA 47, ¶ 18.  The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served.  *Id.* at ¶ 19.  Therefore, if a court allocates parental responsibilities, it must do so in accordance with the child's best interests, *People in Interest of L.B.*, 254 P.3d 1203, 1208

2

(Colo. App. 2011); *see* § 19-3-507(1)(a), C.R.S. 2024, and must focus on the protection and safety of the child and not the parents' custodial interests. *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.

¶ 7 The allocation of parental responsibilities is a matter within the juvenile court's discretion. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14. The credibility of witnesses, the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the juvenile court's discretion. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). And when the juvenile court's findings have record support, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15. But whether the court applied the correct legal standard is a question of law that we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

B. Analysis

¶ 8 In support of his contention that the juvenile court abused its discretion by awarding an APR to maternal grandparents, father

3

points to his progress on his treatment plan and the child's "expressed wishes to be returned home to [f]ather or placed with her paternal grandmother." We perceive no error.

¶ 9 The court found that maternal grandparents met all the child's needs, including the child's mental health concerns. Noting the child had "been through a lot of trauma," the court found that maternal grandparents provided the child with stability, consistency, and commitment during the child's nearly three-year placement with them. And the court found that maternal grandparents had also supported the child's relationship with her parents and K.D.

¶ 10 The record supports the court's findings. The caseworker testified that maternal grandparents were consistent caregivers who met the child's needs, and that the child had been stable during her placement with them. For instance, the child was participating in individual therapy at the time of the hearing. Maternal grandparents also supported the child's relationship with her parents and K.D., all of whom lived outside Michigan at the time of the APR hearing.

¶ 11    The court also found compelling reasons not to return the child home to father. *See People in Interest of M.D.*, 2014 COA 121, ¶ 43 ("[T]he department must establish a compelling reason why it is not in the child's best interests to return home before the court may award permanent custody to a nonparent."). Specifically, the court found that while father had made progress during the case, he was not "fully to the place" where he could meet the child's needs. The court also found that the child was still working on her relationship with father.

¶ 12    The record supports these findings, as well. The caseworker testified that she had not been made aware that father had completed a mental health evaluation. And, though father completed a substance use evaluation in Texas, the caseworker testified that there were "issues" with the evaluation because it did not recommend treatment even though father had been diagnosed with significant use disorder, and did not require a urinalysis test or consider collateral information. Thus, the caseworker testified that before considering father as a potential placement option, he would need to complete a mental health evaluation and a

"legitimate substance abuse" evaluation to determine his treatment needs.

¶ 13     Moreover, the caseworker testified that father wasn't yet able to parent at the time of the hearing because he was "still getting stable himself." She noted that father was incarcerated for five months during the case due to charges related to substance use. And she characterized the child's relationship with father as "strained," noting that during portions of the case, the child refused to speak with father due to her anger toward him.

¶ 14     Based on these findings, the court concluded that granting an APR to maternal grandparents was in the child's best interests. And because the court rested its determination on findings that enjoy record support, its resolution of the evidence is binding on review. *See B.R.D.*, ¶ 15. On this record, we perceive no abuse of discretion. *See E.B.*, ¶ 14.

¶ 15     Nor are we persuaded by father's argument that the court erred by entering the APR given his progress on his treatment plan and the child's wishes about placement.

¶ 16     To be sure, the court heard testimony that father made progress during the case. The court also heard testimony that the

child periodically mentioned she would be willing to be placed with father, so long as K.D. was also placed with him. But, upon weighing all the evidence — including evidence suggesting that father could not yet meet the child's needs — the court determined that returning the child home to father was not appropriate for the reasons described above. It is exclusively within the juvenile court's discretion to weigh the evidence. *See A.J.L.*, 243 P.3d at 249-50.

¶ 17    The court also considered the child's wish, expressed to her guardian ad litem a few days before the hearing, to be placed with her paternal grandmother. According to the guardian ad litem (who nonetheless supported an APR to maternal grandparents), the child expressed this wish because maternal grandparents took away her internet privileges for a month for not cleaning her room. Additionally, paternal grandmother had never volunteered to the Department to act as a placement and had not undergone a background check or kinship study at the time of the APR hearing.

¶ 18    The court ultimately found that the child's report about maternal grandparents' discipline did not raise safety concerns, such as emotional or physical abuse. Rather, the court found that the child's dissatisfaction with her placement coincided with the

loss of her internet access, deeming this a case of the child "pushing . . . boundaries." Again, because the court's findings enjoy record support, we defer to its resolution of the evidence. *See B.R.D.*, ¶ 15.

¶ 19 In essence, father asks us to reweigh the evidence and to substitute our judgment for that of the juvenile court, which we cannot do. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 62; *see also A.J.L.*, 243 P.3d at 250 ("[I]t is important to defer to the [juvenile] court . . . when it hears contradictory testimony on material issues . . . .").

¶ 20 Finally, to the extent that father asserts the court should have delayed its APR ruling to allow further investigation regarding the child's placement preference, we are not persuaded. Based upon the evidence, the court determined that further delaying the resolution of the case was not in the child's best interests. And, indeed, the case had already been open for over three years by the time of the APR hearing.

¶ 21 In sum, the record supports the juvenile court's findings, and its APR based on those findings was neither a misapplication of the

8

law nor manifestly arbitrary, unreasonable, or unfair. Accordingly, the court did not abuse its discretion. *See E.B.*, ¶ 14.

### III.    Disposition

¶ 22    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE LUM concur.