25CA1461 Peo in Interest of EY 05-07-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1461
Garfield County District Court No. 24JV30009
Routt County District Court No. 25JV1
Honorable Billy-George Hertzke, Judge

The People of the State of Colorado,

Appellee,

In the Interest of E.Y., a Child,

and Concerning C.H.,

Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Bernard*, and Ashby*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

Lynaia South, County Attorney, Matthew Fredrickson, Senior Assistant County Attorney, Molly Hamsher, Assistant County Attorney, Steamboat Springs, Colorado for Appellee

Cassandra Coleman, Guardian Ad Litem

Joel M. Pratt, Office of Respondent Parents' Counsel, Colorado Springs, Colorado for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this dependency and neglect proceeding, C.H. (mother) appeals the juvenile court's judgment allocating parental responsibilities for E.Y. (the child) to W.Y. (father).  We affirm.

## I.     Background

¶ 2     In May 2024, father brought the child to the Garfield County Department of Human Services acting manic and requesting assistance.  While there, father called for an ambulance.  When law enforcement arrived with emergency services, they arrested father for violating a protection order restraining him from having contact with the child.  The Garfield County Department then placed the child with mother.  But four days later, mother informed the Garfield County Department that she was overwhelmed, and she thought it was in the child's best interests to be placed in foster care.  Following a shelter care hearing four days later, the Garfield County Department returned the child to father's custody, under its protective supervision, and filed a petition in dependency or neglect.

¶ 3     In October 2024, after law enforcement responded to a welfare check and found father "mentally decompensating" under the influence of alcohol and/or drugs, the Garfield County Department sought, and the juvenile court granted, temporary custody of the

child for placement in foster care. About six weeks later, the Garfield County Department returned the child to father's care under its protective supervision.

¶ 4    Following mother's admission that the child lacked proper parental care through her acts or omissions, the juvenile court adjudicated the child dependent or neglected. The juvenile court then adopted a treatment plan for mother requiring her to (1) obtain and maintain a safe and stable residence for the child; (2) cooperate with the Garfield County Department; (3) complete a mental health assessment and follow all recommendations; (4) participate in life skills; and (5) maintain a positive relationship with the child by attending all scheduled family time, completing an in-person parenting assessment, and attending an approved parenting class.

¶ 5    Six months later, the juvenile court changed venue to Routt County, father's county of residence. Shortly thereafter, the child's guardian ad litem (GAL) moved for an allocation of parental responsibilities (APR) to father, which the Routt County Department of Human Services joined. Following a hearing, the juvenile court allocated sole decision-making responsibility and primary residential care to father and accorded mother two hours of

parenting time, supervised by a licensed mental health professional, per month.

## II.     APR Determination

¶ 6     Mother contends that the court erred by applying the wrong legal standard when allocating parental responsibilities.  We disagree.

### A.     Applicable Law and Standard of Review

¶ 7     The Colorado Children's Code authorizes a juvenile court to enter an order allocating parental responsibilities and addressing parenting time when it maintains jurisdiction in a case involving a dependent or neglected child.  § 19-1-104(5)-(6), C.R.S. 2025; *People in Interest of E.Q.*, 2020 COA 118, ¶ 10.

¶ 8     When allocating parental responsibilities in a dependency and neglect proceeding, the court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2025.  *People in Interest of J.G.*, 2021 COA 47, ¶ 18.  The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures to serve the child's best interests.  *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995).  Thus, the court must allocate parental responsibilities in accordance with the child's best

interests.  *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.  A court may also consider the best interest factors found in section 14-10-124, C.R.S. 2025, of the Uniform Dissolution of Marriage Act, but the court's focus must remain on the child's safety and protection and not the parent's custodial interests.  *Id.*

¶ 9 An APR is within the sound discretion of the juvenile court. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.  A juvenile court abuses its discretion "when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law."  *People in Interest of E.B.*, 2022 CO 55, ¶ 14.  It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses.  *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).  When there is record support for the court's findings, its resolution of conflicting evidence is binding on review.  *B.R.D.*, ¶ 15.  But whether the court applied the correct legal standard in making its findings is a question of law that we review de novo.  *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

## B.    Preservation

¶ 10    The Routt County Department and GAL assert that we should decline to address mother's appellate claim because it is unpreserved.  *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (explaining that, in dependency and neglect cases, appellate courts do not address unpreserved issues).  However, we need not determine whether mother preserved her argument, or was required to, because even if we assume she did, we discern no basis for reversal.  *Cf.* C.R.C.P. 52 ("Neither requests for findings nor objections to findings rendered are necessary for purposes of review."); *see also L & R Expl. Venture v. Grynberg*, 271 P.3d 530, 536 (Colo. App. 2011) (declining to resolve an issue where the outcome would not change).

## C.    Analysis

¶ 11    In allocating parental responsibilities, the juvenile court considered the child's physical, mental, and emotional needs, the factors under section 14-10-124(1.5) and found that the child's emotional and physical wellbeing would be best served by allocating primary physical custody to father.  The court further found that mother did not successfully complete her treatment plan, maintain

consistent contact, or have a "stable, safe or healthy relationship with the child." Thus, the court found that it was in the child's best interests for mother's parenting time to be supervised by a licensed mental health professional.

¶ 12 Mother does not contest these findings. Instead, she asserts that, because the juvenile court's order modified a prior order allocating parental responsibilities between the parents stemming from their dissolution of marriage proceeding, the court erred by considering section 14-10-124(1.5) (detailing factors for courts to consider when initially allocating parental responsibilities) and not section 14-10-129, C.R.S. 2025 (governing modifications of parenting time). In so arguing, mother asserts that the juvenile court was required to make endangerment findings before "restricting" her parenting time.

¶ 13 However, Title 19, not Title 14, governs the juvenile court's allocation of parental responsibilities in a dependency and neglect proceeding. *See L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1390 (Colo. 1996) ("[T]he exclusive authority of a juvenile court to determine issues of child custody arising in the course of dependency and neglect proceedings is established by the

[Children's] Code."). And endangerment findings are not required for the entry of an APR under Title 19. *See People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011) ("Because the adjudication of [the child] as dependent and neglected provided the predicate for the disposition entered, no finding concerning either unfitness or endangerment was necessary."). Moreover, proceeding, as mother argues, with "a presumption that prior orders should remain in effect," would erroneously prioritize a parent's custodial interests over the child's best interests. *See H.K.W.*, ¶ 13.

¶ 14    In short, because the juvenile court focused on the overriding purpose of the Children's Code when allocating parental responsibilities, we conclude that the juvenile court applied the correct legal standard and discern no error.

## III.    Reasonable Efforts

¶ 15    Mother next asserts that the juvenile court erred by allocating parental responsibilities without considering whether the Garfield County and Routt County Departments made reasonable efforts to reunite the family by providing appropriate family time and accommodating her disability. We discern no error.

A. Applicable Law and Standard of Review

¶ 16     A department must make reasonable efforts to rehabilitate parents and reunite families following the placement of abused or neglected children out of the home. §§ 19-1-103(114), 19-3-100.5, 19-3-208(1), 19-3-604(2)(h), C.R.S. 2025. Reasonable efforts "means the exercise of diligence and care . . . for children . . . who are in [or are at imminent risk of being placed in] foster care or out-of-home placement." § 19-1-103(114).

¶ 17     The Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, requires a public entity, such as a county department of human services, to make reasonable accommodations for qualified individuals with disabilities. *See People in Interest of C.Z.*, 2015 COA 87, ¶¶ 11-12. Specifically, the ADA requires that, as part of the reasonable efforts determination, the court consider whether the department provided a parent with reasonable accommodations. *People in Interest of S.K.*, 2019 COA 36, ¶ 34.

¶ 18     Whether a parent is a qualified individual with a disability under the ADA requires a case-by-case determination. *Id.* at ¶ 21. Before a department can be required to provide reasonable

accommodations under the ADA, it must know that the individual has a qualifying disability, either because that disability is obvious or because someone has informed the department of the disability. *Id.* at ¶ 22. Thus, while a department must provide appropriate screenings and assessments of a parent, the parent is responsible for disclosing information regarding her disability. *Id.* at ¶ 21. And a parent should also identify any modifications that she believes are necessary to accommodate her disability. *Id.*

¶ 19 A parent is ultimately responsible for using the services provided by a department to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). In determining whether a department made reasonable efforts, a juvenile court should consider the totality of the circumstances and account for all services and resources provided to a parent, measuring them holistically rather than in isolation with respect to specific treatment plan objectives. *See People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶¶ 33, 35.

¶ 20 Whether a department of human services satisfied its obligation to provide reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review

the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

## B. Family Time

¶ 21 Mother contends that the juvenile court erred by granting the APR despite the Garfield County Department's failure to make reasonable efforts to reunify the family. Specifically, mother asserts that the Garfield County Department repeatedly reduced her family time without first requesting a hearing in violation of section 19-3-217(3), C.R.S. 2025. The Routt County Department and GAL assert that mother did not adequately preserve this contention. We agree. *See M.B.*, ¶ 14 (noting that appellate courts will "review only issues presented to and ruled on by the lower court").

¶ 22 Mother acknowledges that she did not "address the repeated reductions [of,] and increased restrictions on [her] family time" at the APR hearing. Even so, she argues the issue is adequately preserved for our review because the "visitation component" of her treatment plan was a "primary reason" why the juvenile court allocated her two hours of supervised parenting time per month. Although the juvenile court considered mother's lack of consistent

participation in family time when deciding what parenting time schedule for mother was in the child's best interests, we disagree with mother that this finding sufficiently preserved for our review her reasonable efforts argument based on a failure to hold hearings when entering orders restricting her parenting time.

¶ 23    Neither mother nor her counsel objected to the reductions in her family time as they occurred, argued at the APR hearing that such reductions exemplified a lack of reasonable efforts by the Garfield County Department, or asked the juvenile court to deny the APR because of a lack of reasonable efforts. *See Forgette v. People*, 2023 CO 4, ¶ 21 ("Although we do not require that parties use talismanic language to preserve an argument for appeal, a party must present the trial court with 'an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it.'" (quoting *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004)). As a result, the juvenile court did not make any reasonable efforts findings before allocating parental responsibilities. Nor does mother provide any authority supporting her argument that the court was required to make such findings when allocating parental responsibilities between parents. *Cf. A.S.L.*, ¶ 20 (determining that

11

the court is required to consider reasonable efforts when it enters an APR to a nonparent).

¶ 24 Thus, because mother did not present the juvenile court with an adequate opportunity to make findings of fact and conclusions of law regarding her assertion that the Garfield County Department improperly restricted her family time and failed to provide reasonable efforts to reunify the family, we do not review this issue. *See M.B.*, ¶ 14.

## C. ADA Accommodations

¶ 25 Mother also asserts that the juvenile court erred by not considering "the department's failure to implement her requested A.D.A. accommodations, before ruling that [she] had failed to complete her treatment plan." We disagree.

### 1. Additional Background

¶ 26 Four-and-a-half months before the APR hearing, mother's counsel filed a notice asserting that the ADA applied based on mother's schizophrenia diagnosis. As a result, mother requested several accommodations including (1) medical reminders for appointments and medicine; (2) transportation support; (3) motivational interviewing; (4) clearly defined case standards; (5)

written instructions, at an appropriate educational level, prior to appointments; (6) increased structure, routines, and predictability; (7) simplified instructions and the opportunity to repeat back instructions to confirm understanding; (8) cognitive behavior therapy (CBT); and (9) caseworker communication after important meetings and court appearances. The Garfield County Department did not object to any of mother's requested accommodations but emphasized that, to provide the accommodations, the Department needed her to communicate.

## 2.     Preservation

¶ 27     The Routt County Department and GAL assert that mother did not preserve this claim for appeal. We need not decide this issue because, even if we assume mother preserved her claim, we discern no reversible error.

## 3.     Analysis

¶ 28     Mother argues that once notified of her disability and need for accommodations the Garfield and Routt County Departments did not provide reasonable accommodations for her and therefore failed to make reasonable efforts to rehabilitate her. *See S.K.,* ¶ 34 (holding that the ADA requires that, as part of the reasonable efforts

13

determination, the court consider whether the department provided a parent with reasonable accommodations). And she correctly asserts that the juvenile court made no specific written or oral findings regarding ADA accommodations at the APR hearing. As discussed in section III.B. above, the need for the court to make findings as to reasonable efforts at the APR hearing at all is unclear since it was ordering APR to a parent. But reading mother's argument to challenge the court's general determinations that her treatment plan was appropriate and she failed to successfully comply with her treatment plan, we address it here.

¶ 29     We note that the court's failure to make express findings at the APR hearing, on its own, "does not establish a failure by the court to ensure that the Department made reasonable efforts." *A.S.L.*, ¶ 15. And, because the provision of reasonable accommodations is a subset of a court's reasonable efforts determination, a court's failure to express reasonable accommodations findings, on its own, does not establish a failure by the court to ensure that a department provided reasonable accommodations. *See S.K.*, ¶ 34 ("[A] juvenile court should consider whether reasonable accommodations were made for the parent's

14

disability in determining whether the parent's treatment plan was appropriate and reasonable efforts were made to rehabilitate the parent.").

¶ 30    Reviewing de novo the ultimate question of whether the Garfield and Routt County Departments satisfied their obligations, we conclude that the record sufficiently demonstrates the Departments' efforts to provide reasonable accommodations for mother's disability during the pendency of the case.

¶ 31    The Routt County Department caseworker testified that she reached out to mother multiple times, by phone, email, and text, to try to assess mother's status. But mother responded inconsistently and primarily via text message. The caseworker acknowledged mother's disability and need for appointment reminders, additional processing time, and transportation support, among other accommodations. But, based on mother's preference to primarily communicate via text and her lack of consistent communication, the Departments were limited in their ability to provide mother with her requested accommodations.

¶ 32    Even so, mother asserts that the caseworkers failed to use "motivational interviewing techniques" and, despite mother's

15

difficulty following complicated instructions, the Departments offered no transportation assistance beyond the offer of bus passes. But mother does not clarify how the Departments could have provided motivational interviewing techniques via text message. Nor does mother explain how more detailed instructions about the provided bus passes would have accommodated her disability. *See id.* at ¶ 21. Indeed, mother does not connect her inability to ride the bus to her disability, stating only that she was "unable to get on the bus for the scheduled visit." *See id.* at ¶ 34 ("[W]hen a parent involved in a dependency and neglect proceeding has a disability under the ADA, the Department and the juvenile court must account for and, if possible, make reasonable accommodations *for the parent's disability* when . . . providing rehabilitative services to the parent.") (emphasis added).

¶ 33 In sum, the record reflects that the Garfield County and Routt County Departments endeavored to make reasonable accommodations for mother's disability, but ultimately mother's lack of engagement limited the accommodations the Departments could provide to her. *See J.C.R.,* 259 P.3d at 1285. Thus, we discern no basis for reversal.

## IV. Ineffective Assistance of Counsel

¶ 34    Mother contends that she received ineffective assistance of counsel because her counsel failed to (1) object to repeated changes in mother's family time or request a hearing pursuant to section 19-3-217(3); (2) discuss the Garfield County Department's proposed treatment plan before the juvenile court ordered it as part of its dispositional order; (3) request ADA accommodations sooner than four-and-a-half months before the APR hearing; (4) file a written response to the APR motion to advocate for more parenting time for mother; (5) refute the caseworker's testimony that father had completed his treatment plan; and (6) object to the GAL's portrayal of mother as a domestic violence offender. We disagree.

### A. Applicable Law

¶ 35    A parent has a statutory right to effective counsel in dependency and neglect proceedings. §§ 19-1-105(2), 19-3-202(1), C.R.S. 2025; *A.R. v. D.R.*, 2020 CO 10, ¶ 47. A parent can raise a claim of ineffective assistance of counsel in a dependency and neglect proceeding for the first time on appeal. *People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007).

¶ 36    We employ the same *Strickland* test that is used in criminal cases to evaluate ineffective assistance of counsel claims in dependency and neglect proceedings. *A.R.,* ¶ 60 (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). Under this test, to establish a claim, the parent must show that (1) counsel's performance was outside the wide range of professionally competent assistance, and (2) the parent was prejudiced by counsel's deficient performance — that is, there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at ¶¶ 48, 60. "If the parent fails to establish either prong of this test, the claim fails." *People in Interest of C.B.,* 2019 COA 168, ¶ 26.

¶ 37    If the parent's allegations lack sufficient specificity, we may summarily deny the ineffective assistance claim. *See C.H.,* 166 P.3d at 291. In other words, a remand for an evidentiary hearing is only required if the parent's allegations are sufficiently specific and compelling to constitute a prima facie showing of ineffective assistance of counsel. *Id.*

18

## B.     Timeliness

¶ 38     The Routt County Department and GAL assert that we should deny mother's claim of ineffective assistance stemming from the dispositional hearing, as untimely.  Citing *A.R.*, they argue that, because mother did not appeal the juvenile court's adjudicatory order or disclose an impediment to her ability to raise this claim in such an appeal, her claim is untimely.  However, their reliance on *A.R.* is misplaced.  In *A.R.*, the parent sought relief from a juvenile court's judgment terminating her parental rights based, in part, on a claim of ineffective assistance of counsel stemming from "counsel's performance at the adjudicatory hearing."  *A.R.*, ¶ 43.  Our supreme court held that, because the parent "was aware (or reasonably should have been aware) of the facts giving rise to any claim of ineffective assistance at the adjudicatory hearing" and because "[a]n order decreeing a child to be neglected or dependent [is] a final and appealable order after the entry of the disposition," her claim was untimely.  *Id.* at ¶¶ 41, 43 (quoting § 19-1-109(2)(c), C.R.S. 2025).  But here, mother asserts only that her counsel was ineffective at the dispositional hearing, not the adjudicatory hearing.  And dispositional orders are not, by themselves, final and

appealable orders. *See People in Interest of H.T.*, 2019 COA 72, ¶ 1. Therefore, because mother did not have a prior opportunity to raise her claim of ineffective assistance of counsel at the dispositional hearing, we will address it on its merits.

## C. Analysis

¶ 39    Even if we assume, without deciding, that trial counsel's actions amounted to deficient performance, mother has failed to show that but for counsel's failures the result of the proceeding would have been different. *See A.R.*, ¶ 60.

¶ 40    Mother's only assertions of prejudice are that, had counsel "taken any of [the] listed actions promptly, the trajectory of the dependency and neglect case could have changed" because mother "could have had" (1) consistent family time; (2) CBT treatment; and (3) increased support to facilitate family time. And with these, mother asserts, the juvenile court's parenting time orders "could have been different."

¶ 41    But, as the caseworker testified, mother did not communicate to schedule family time or consistently attend the family time that she did schedule. And to the best of the caseworker's knowledge, mother did not complete the mental health assessment required by

her treatment plan. Thus, even if mother's counsel had objected to ongoing reductions in mother's family time, discussed the treatment plan with mother before its adoption, or filed for ADA accommodations earlier in the case, mother has not established how these actions would have resolved her overall lack of engagement. *See People v. Sherman*, 172 P.3d 911, 914 (Colo. App. 2006) (holding that a speculative claim does not satisfy the prejudice prong of *Strickland*). And, ultimately, the juvenile court focused on mother's lack of consistent engagement when deciding the best parenting time schedule for the child.

¶ 42 Mother's remaining ineffective assistance claims focus on the evidence presented during the APR hearing. First, she asserts that counsel erred by not requesting more parenting time for mother — specifically, an allocation of equal parenting time or, at a minimum, more than two hours of therapeutically supervised parenting time per month. But mother's counsel opposed the GAL's proposed parenting time schedule, advocating instead for a gradually increasing parenting time schedule. And, considering that the juvenile court declined to order the requested graduated parenting time schedule, we do not see how the outcome of the proceeding

21

would have been different had mother's counsel advocated for even more parenting time.

¶ 43 Second, mother asserts that trial counsel failed to refute the caseworker's representation that father had completed his treatment plan — noting that father had not engaged in the treatment recommended by his mental health evaluation or signed a release allowing the caseworker to verify his domestic violence treatment. But father's treatment plan did not require him to engage in domestic violence treatment. And, before opining that father had reasonably complied with his treatment plan, the caseworker acknowledged that he had not participated in the treatment recommended by his mental health evaluation as contemplated by his treatment plan. Moreover, when allocating parental responsibilities between the parents, a court is not required to make findings regarding parental fitness or treatment plan compliance to determine which APR is in the child's best interests. *See L.B.*, 254 P.3d at 1208.

¶ 44 Finally, mother asserts that her counsel "allowed" mother to be "portrayed at the APR hearing as a domestic violence offender." Mother's only basis for this assertion is one statement made by the

22

GAL in her closing argument, specifically "[a]s was alluded to by [mother], there [were] times when the parties . . . had informal supervision between each other. That ha[d] not worked out because of the domestic violence between them . . . ." But, as stated, the GAL based her argument on mother's own testimony discussing the parties' domestic violence history. And the juvenile court made no findings about, or reference to, domestic violence instigated by either party when allocating parental responsibilities.

¶ 45 For these reasons, mother's claims do not establish a reasonable probability that, but for counsel's allegedly unprofessional errors, the outcome of the proceeding would have been different. Therefore, mother has not made a prima facie showing of ineffective assistance of counsel and, as a result, her claims must fail. *See C.B.*, ¶ 26.

## V. Disposition

¶ 46 The judgment is affirmed.

JUDGE BERNARD and JUDGE ASHBY concur.