25CA1652 Peo in Interest of OF 05-14-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1652
El Paso County District Court No. 24JV30461
Honorable Robin Chittum, Judge
Honorable Hilary Gurney, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of O.F., a Child,

and Concerning R.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE BERNARD*
Román, C.J., and Ashby*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 14, 2026

---

Kenneth Hodges, County Attorney, Melanie E. Gavisk, Senior County Attorney, Colorado Springs, Colorado for Appellee

Josi McCauley, Guardian Ad Litem

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado for Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1　　In this dependency and neglect action, a father, R.M., appeals the judgment allocating parental responsibilities for his child, O.F., to the child's paternal grandmother, A.K.  We affirm.

## I.　　Background

¶ 2　　In June 2024, the El Paso County Department of Human Services filed a petition in dependency and neglect naming the child, which was triggered by concerns about mother's use of controlled substances.

¶ 3　　This was the second dependency and neglect petition concerning the child, and it was, in part, based on concerns about father's substance abuse and domestic violence.  The El Paso County Department's previous petition was closed in 2023 with an allocation of parental responsibilities to mother.  Among other things, the allocation granted father supervised parenting time, and it indicated he should pursue treatment to address his substance abuse and domestic violence issues.  The juvenile court later found father had not pursued treatment, so it authorized the El Paso County Department to file the 2024 petition.

¶ 4　　Father asked for an adjudicatory jury trial.  The jury returned special verdicts finding the child was dependent or neglected.  The

court adjudicated the child dependent and neglected, and it adopted a treatment plan for father. *See People in Interest of O.L.F.*, (Colo. App. No. 24CA1511, Mar. 20, 2025)(not published pursuant to C.A.R. 35(e)).

¶ 5     There was a conflict between father and the El Paso County Department. It arose from a third dependency and neglect case involving one of father's other children. As a result, the Pueblo County Department of Human Services, which we shall call "the department," and a special county attorney entered the case, replacing the El Paso County participants.

¶ 6     Father consistently asked the court throughout the case to allocate parental responsibilities to him. The court set father's motion for a contested hearing, and the department later asked the court to allocate parental responsibilities to the paternal grandmother. Almost one year after the petition was filed, the court granted the department's request.

## II.     Personal Jurisdiction

¶ 7     Father contends the court lacked jurisdiction to allocate parental responsibilities for the child because he was not properly served. We disagree.

2

## A. Relevant Law and Standard of Review

¶ 8 The Children's Code requires summonses in dependency and neglect actions "be served personally, pursuant to the Colorado rules of civil procedure," unless the respondent "cannot be found within the state." § 19-3-503(7)-(8), C.R.S. 2025. But "[n]o summons shall issue to any respondent who appears voluntarily or who waives service." § 19-3-503(2).

¶ 9 A parent may "appear specially to contest a court's personal jurisdiction over [him] and such special appearance may not result in the court's acquiring personal jurisdiction" over him. *See Delta Cnty. Mem'l Hosp. v. Indus. Claim Appeals Off.*, 2021 COA 84, ¶ 22. But, if the parent makes a voluntary appearance by contesting the case without challenging personal jurisdiction, they "submit[] to the court's personal jurisdiction over [them, and] no further inquiry is necessary." *Id.* at ¶ 19. A "general appearance" is made when a parent "separately or in conjunction with a motion going only to the jurisdiction invokes the power of the court on the merits, or moves to dismiss the action, or asks relief which presupposes that jurisdiction has attached." *Id.* at ¶ 22 (citations omitted).

¶ 10    When jurisdictional issues raised on appeal do not involve a factual dispute, we review them de novo. *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 17.

## B.    Analysis

¶ 11    Father first appeared at the shelter hearing, where he declared he "just wanted to challenge the jurisdiction of the court"; he said he was "a parent available and willing to take care of the child." He received a copy of the petition at this appearance, but, at the next hearing, the court determined he had not been properly served. He appeared at the next hearing and again declined to waive service.

¶ 12    Later at that same hearing, father declared, "I just want a jury trial if it's going to waste time for them to serve me and it's going to happen anyway." The court set the jury trial for father and ordered the department to serve father "[b]ecause there wasn't proper service at shelter."

¶ 13    The record does not show father was personally served.

¶ 14    Father directs us to both hearings and pleadings in which he objected to the "jurisdiction" of the juvenile court. We note, without exception, these references are not to a lack of personal jurisdiction due to the lack of service. Instead, father asserted he was available

to parent the child, and, as a result, the court lacked subject matter jurisdiction because the child was not dependent or neglected.

¶ 15    Despite father's objections at the various hearings, the record is clear he made a general appearance in this case, submitting to the court's personal jurisdiction and ending our inquiry. *Delta Cnty. Mem'l Hosp.*, ¶ 19. Father invoked the power of the court on the merits, moved to dismiss the case, and asked for relief available to him only if jurisdiction had attached. *Id.* at ¶ 22. Although he repeatedly said the court lacked jurisdiction because of his fitness, he also made multiple motions, filed pleadings, and sought specific relief from the court including moving several times for an allocation of parental responsibilities to himself. *See In re Marriage of Noon*, 735 P.2d 884, 885-86 (Colo. App. 1986)(determining that there was no general appearance where nonparties "showed no intention to submit to jurisdiction [because] they made no motions, filed no pleadings, and sought no relief"). Doing so demonstrated his intent to submit to the jurisdiction of the court to allocate parental responsibilities. *Id.*

## III. Venue

¶ 16 Father asserts the court erred because it did not transfer venue out of El Paso County. We disagree.

¶ 17 It is uncontested there was a conflict between father and the El Paso County Department. As a result, the department from Pueblo stepped in and assigned a caseworker to the family. A special county attorney represented the People. The court noted father had an "understandable lack of confidence in anything that comes out of the Fourth Judicial District" and, on its own motion, moved to transfer the case's venue to Pueblo County under section 19-3-201(2), C.R.S. 2025.

¶ 18 "When proceedings are commenced . . . in a county other than that of the child's residence, the court in which proceedings were initiated may" transfer venue to the county where the child's legal parent or guardian resides or is located. § 19-3-201(2). The child was placed with the paternal grandmother, who resided in Pueblo County. When a child is in a department's legal custody, the child "shall be deemed . . . to reside in the county in which the child's legal parent or guardian resides." § 19-3-201(1.5). After hearing argument on its own motion for change of venue, the court

6

determined the child was a resident of both El Paso and Pueblo Counties. The record supports this determination because father resided in Pueblo County, and mother resided in El Paso County, where this case began. *See id.*

¶ 19 The court decided a change of venue was permissible, but it then decided not to transfer venue. The court left open the possibility of renewing its own motion if mother did not reengage in services, and it encouraged the parties to separately move for a change in venue if they felt it was warranted. No party did so, and the court did not take up the issue of changing venue again.

¶ 20 We conclude the court did not err when it decided not to change venue from El Paso County. While the Children's Code permitted a change of venue in these circumstances, one was not required. *See People in Interest of M.D.*, 2014 COA 121, ¶ 41 ("Because the statute uses the permissive "may," the trial court is not required to make such findings.")

¶ 21 Father asserts there was "an appearance of impropriety" within the entirety of the Fourth Judicial District requiring "disqualification of the entire judicial district." He directs us to cases explaining an appearance of impropriety can require a judicial

officer to recuse from a proceeding. *See People in Interest of C.Y.*, 2018 COA 50, ¶¶ 14-15. But father does not explain, and we do not see, why this analysis should have applied to the entire Fourth Judicial District. While two judicial officers in the Fourth Judicial District recused themselves from this case, father does not allege, and the record does not show, that the judicial officer who oversaw the hearing on father's and the Pueblo Department's allocation of parental responsibilities motions was unable to act impartially in father's case or that "a reasonable observer might have doubts about the judge's impartiality." *Id.* at ¶ 15.

## IV. Reasonable Efforts

¶ 22     Father contends the court erred by finding the department made reasonable efforts because the caseworker "never made any efforts himself" to contact father's medication management provider.

¶ 23     When a juvenile court allocates parental responsibilities to a nonparent, it must find a department made reasonable efforts to reunify the family and to avoid placing the child outside of the home. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 20; § 19-3-100.5, C.R.S. 2025. A department satisfies its reasonable efforts

8

obligation if it provides services in accordance with section 19-3-208, C.R.S. 2025.  § 19-1-103(114), C.R.S. 2025; *see People in Interest of E.D.*, 2025 COA 11, ¶ 10.

¶ 24    As necessary and appropriate, those services include screenings, assessments, and individual case plans; home-based family and crisis counseling; information and referral services; family time services; and placement services.  § 19-3-208(2)(b)(I)-(V).  Nothing in section 19-3-208 requires a department to establish or maintain contact with a parent's outside treatment provider.

¶ 25    Importantly, father's medication manager was not providing any service required under the court-ordered treatment plan.  Nevertheless, the caseworker testified he tried to reach the medication manager at father's request, and father provided an information release.  But the medication manager did not respond.

¶ 26    We understand father's contention to be the department should have been held responsible for verifying father's engagement in medication management because his "engagement in treatment was necessary to place [the child] in [his] custody."  We disagree.

¶ 27    Even if father was engaged with his medication management provider, he does not explain how doing so resulted in compliance

with the treatment plan, which required assessments for substance dependence and domestic violence to determine if further treatment was necessary. And father does not explain why the department's not communicating with the medication manager prevented him providing whatever verification he felt was necessary directly to the court.

¶ 28 Father does not contend the department did not give him any of the services described in section 19-3-208. We therefore conclude the court did not err when it found the department made reasonable efforts.

## V. The Allocation of Parental Responsibilities

¶ 29 Father submits the court erred when it found the child's placement with him was *not* in the child's best interests, while placement with the paternal grandmother *was* in the child's best interests.

¶ 30 Allocating parental responsibilities is a matter within the juvenile court's discretion. *See In re B.R.D.,* 2012 COA 63, ¶ 15. When there is record support for the juvenile court's findings, its resolution of conflicting evidence is binding on review. *Id.*

¶ 31    Although a juvenile court must allocate parental responsibilities to best serve "the interests of the child and the public," § 19-3-507(1)(a), C.R.S. 2025, the Children's Code does not prescribe any specific factors a court must consider in making its decision. *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005). Still, a court must "be guided by the purposes of the Code and resolve the issue in a manner that furthers the best interests of the child and the public." *Id.* at 1283.

¶ 32    In this case, the court found there were "many compelling reasons" not to place the child with father, including concerns about his mental health and substance dependence. The court found, with support in the record, father had no insight into the "serious mental health concerns [that] make him unable to work together with other adults to address issues and solve problems for [the child]." It further found father was "unable to shelter [the child] from the hostile, inappropriate and threatening environment which he creates."

¶ 33    The caseworker, an expert in child welfare, testified father "tr[ied] to play [the child] against" mother, and doing so had mentally damaged the child. The paternal grandmother, who

11

supervised father's family time, testified father discussed "inappropriate" topics during family time, and doing so was "hard on [the child's] little mind."  The grandmother also testified father would not accept feedback about how to be appropriate with the child, and he got angry and called her names in front of the child.

¶ 34    In contrast, the court found giving the paternal grandmother sole residential custody and decision-making responsibilities was in the child's best interests.  The court also found allowing the child and the paternal grandmother to relocate to Missouri for parts of the year was in the child's best interests.

¶ 35    The record supports these findings.  The caseworker testified the paternal grandmother demonstrated the ability to provide a stable environment in which the child thrived, adding the child would benefit from going to school with her cousins and otherwise having the support of family in Missouri.  (Both the caseworker and the paternal grandmother testified the grandmother's extended support system was in Missouri.)

¶ 36    The uncontested evidence at the hearing was that the paternal grandmother regularly traveled with the child between Colorado and Missouri.  She demonstrated the ability to facilitate continued

contact between the child and her parents regardless of where she was based.

¶ 37    Father contends the court erroneously relied on the relocation factors from title 14 when determining permitting the move to Missouri was in the child's best interests. But it is well established a juvenile court "may consider the best interest factors listed in the Uniform Dissolution of Marriage Act (UDMA) as long as the focus is on the protection and safety of the child and not on the 'custodial interests' of the parents." *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13 (citations omitted). We therefore conclude the court did not err when it allocated parental responsibilities to the paternal grandmother.

## VI.    Due Process

¶ 38    Father submits he was denied the right to counsel, which, in turn, denied him his due process rights. We disagree.

¶ 39    We begin by noting, "whe[n], as here, the state seeks only to award custody of a child to other persons rather than to terminate parental rights, a parent has no due process right to counsel." *People in Interest of L.B.*, 254 P.3d 1203, 1206 (Colo. App. 2011). But, as an indigent parent, father had a statutory right to court-

13

appointed counsel "at every stage of the dependency and neglect proceeding." §§ 19-1-105(2), 19-3-202(1), C.R.S. 2025.

¶ 40    Accordingly, throughout the proceedings, the court encouraged father to apply for counsel. Father refused to do so until ten months after the filing of the petition; father's request was promptly granted, and the court appointed an attorney for father. The appointed attorney moved to withdraw just fifteen days later, and the court granted this motion. Father did not object, and he did not ask the court to appoint another attorney for him.

¶ 41    The statutory right to counsel can be waived. *People in Interest of B.H.*, 2021 CO 39, ¶ 67. Waiver may be express or implied; an "[i]mplied waiver requires a person to 'engage in conduct which manifests an intent to relinquish the right' or to 'act inconsistently with its assertion.'" *Id.* (citation omitted). A parent "impliedly waives a statutory right through freely chosen conduct that clearly manifests an intent to relinquish the right or is inconsistent with its assertion." *Id.* at ¶ 70.

¶ 42    We conclude father waived his statutory right to counsel at the allocation of parental responsibilities hearing. He did not object when his appointed attorney withdrew. In the month between his

counsel's withdrawal and the hearing, father filed two motions on his own behalf, one to "terminate temporary custody" with the department and the second renewing his earlier motion asking the court to allocate parental rights to him.

¶ 43    At the hearing, father represented himself by cross-examining witnesses, making objections, and testifying in his own behalf. Father did not hesitate to raise concerns about the department and about other judicial officers, but he did not request counsel or suggest he was concerned about his ability to represent himself effectively.

¶ 44    Father relies on *People in Interest of J.B.*, 702 P.2d 753 (Colo. App. 1985), to claim the court committed reversible error when it did not provide him with counsel.  In *J.B.*, the court sua sponte dismissed the parent's counsel after denying a motion for termination of parental rights and then reappointed the same counsel eighteen months later after a second motion for termination was filed.  *Id.* at 754.  The *J.B.* division held the statutory right to counsel attached at "statutorily prescribed proceeding[s] for review of out of home placements." *Id.* at 755.

¶ 45    In this case, the record does not show the court would have denied a request for another attorney had such a request been made.  Unlike the parent in *J.B.*, who "continually made known to the trial court [the] desire to be represented by an attorney," father consistently asserted he did not want counsel.

¶ 46    Father also asserts his counsel's motion to withdraw was deficient because it directed him to hire counsel rather than reapply for court-appointed counsel.  We do not address this issue because it was raised for the first time in father's reply brief.  *See People in Interest of J.L.P.*, 870 P.2d 1252, 1259 (Colo. App. 1994)

¶ 47    Under these circumstances, we cannot agree with father's claim he was "wholly deprived of his right to counsel" after his appointed counsel withdrew.

¶ 48    Father also contends he was denied discovery.  During the caseworker's testimony, father told the court, "I was never actually given ongoing discovery, because I moved around a lot."  But father did not make any further record about discovery, and he did not ask the court for any relief concerning his putative lack of access to the discovery materials.  His claims about discovery are therefore not properly before us.  *Forgette v. People*, 2023 CO 4, ¶ 23

16

("[M]erely calling an issue or fact to the court's attention, without asking for any relief, is insufficient to preserve an issue for review."); *see also Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21 ("If a party raises an argument to such a degree that the court has the opportunity to rule on it, that argument is preserved for appeal.").

¶ 49    The judgment allocating parental responsibilities is affirmed.

CHIEF JUDGE ROMÁN and JUDGE ASHBY concur.